Danny C. Lallis
Danielle J. Reiss
PISCIOTTI MALSCH
30 Columbia Turnpike, Suite 205
Florham Park, New Jersey 07932
(973) 245-8100
dlallis@pmlegalfirm.com
dreiss@pmlegalfirm.com

ATTORNEYS FOR PLAINTIFF
FRANKLIN ARMORY, INC.

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| FRANKLIN ARMORY, INC.,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>STATE OF NEW JERSEY; NEW JERSEY STATE POLICE; COL. PATRICK A. CALLAHAN, in his capacity as Superintendent of New Jersey State Police; ATTORNEY GENERAL OF THE STATE OF NEW JERSEY; GURBIR GREWAL, in his official capacity as Attorney General, NEW JERSEY DEPARTMENT OF LAW AND PUBLIC SAFETY, and JOHN DOES 1-10, fictitious parties,<br><br>　　　　Defendants. | Civ. No. 1:19-cv-19323<br><br><br>**COMPLAINT AND JURY DEMAND** |

NOW COMES Plaintiff Franklin Armory, Inc. ("Plaintiff" or "Franklin Armory"), by and through undersigned counsel, and alleges as follows based on personal knowledge, investigation of counsel, and information and belief:

## INTRODUCTION

1.　　This lawsuit arises out of the official misconduct, negligence, recklessness and/or purposefully, intentional or callously indifferent conduct of Defendants State of New Jersey, New

Jersey State Police, Patrick A. Callahan (in his capacity as Superintendent of the State of New Jersey Police), Attorney General of the State of New Jersey, Gurbir Grewal (in his official capacity as Attorney General), and the New Jersey Department of Law and Public Safety ("Defendants"). Specifically, Defendants have violated Plaintiff's constitutional rights and caused irreparable damage to Plaintiff by improperly, and without legal justification, preventing, precluding, and delaying the lawful sale of lawful firearms within the State of New Jersey.

### JURISDICTION AND VENUE

2.      The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) because the matter in controversy exceeds $75,000 and the parties are citizens of different States.

3.      This action also arises under the Second, Fifth, and Fourteenth Amendments to the United States Constitution as well as 42 U.S.C. § 1983 and 28 U.S.C. § 2201.  Accordingly, this Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. §§ 1331, 1443, 1367, 2201, and 2202.

4.      Venue is proper in this judicial District pursuant to 28 U.S.C. § 1391 because all defendants are residents of, and a substantial part of the events and omissions giving rise to the claim occurred in, the State of New Jersey, which is where this District Court is located.

5.      This Court has personal jurisdiction over Defendants.  All Defendants are citizens and residents of the State of New Jersey and have continuous and systematic contact with the State of New Jersey, which establishes a basis for general personal jurisdiction.  Furthermore, this lawsuit arises out of Defendants' contacts with the forum inasmuch as the lawsuit arises from Defendants' conduct and decisions related to Plaintiff's attempt to lawfully sell its products in the State of New Jersey.  Accordingly, the exercise of jurisdiction comports with fair play and substantial justice.

## PARTIES

6.      Plaintiff Franklin Armory is a corporation organized under the laws of the State of Nevada with a principal place of business in Nevada.  Plaintiff is a licensed manufacturer of firearms and firearm parts.

7.      Defendants State of New Jersey, New Jersey State Police, the New Jersey Office of Attorney General, and the New Jersey Department of Law and Public Safety are public entities formed under the laws of the State of New Jersey with principle places of business within the State of New Jersey (collectively, "New Jersey").

8.      Defendant Attorney General Gurbir Grewal is the duly elected Attorney General for the State of New Jersey and is named in his official capacity ("Attorney General").

9.      Defendant Patrick A. Callahan is the Superintendent of the New Jersey State Police and is named in his official capacity ("State Police").

10.      Defendant John Does 1-10 are fictitious parties (persons or legal entities) whose names are presently unknown but who, upon information and belief, contributed to the acts and omissions giving rise to this lawsuit.

## FACTS

### I.      Federal Firearms Laws

11.      In 1934, Congress enacted the National Firearms Act, 26 U.S.C. § 5801, *et seq.* ("NFA"), which restricted and regulated the sale, ownership, use, and transport of short barreled rifles, short barreled shotguns, machine guns, silencers, suppressors, and "destructive devices."

12.      The NFA levied a federal tax on the manufacture, sale, and transfer of certain classes of firearms.

13.     The NFA also requires the registration, with the federal government, of certain firearms identified in the Act, which include "machineguns"; rifles and shotguns that have an overall length under 26 inches; rifles with a barrel under 16 inches; shotguns with a barrel under 18 inches; and firearm suppressors.  26 U.S.C. § 5845(a).

14.     Under the NFA, "rifles" and "shotguns" are defined as follows:

(c)  The term "rifle" means a weapon designed or redesigned, made or remade, and intended to be fired from the shoulder and designed or redesigned and made or remade to use the energy of the explosive in a fixed cartridge to fire only a single projectile through a **rifled bore** for each single pull of the trigger, and shall include any such weapon which may be readily restored to fire a fixed cartridge.

(d)  The term "shotgun" means a weapon designed or redesigned, made or remade, and intended to be fired from the shoulder and designed or redesigned and made or remade to use the energy of the explosive in a **fixed shotgun shell** to fire through a **smooth bore** either a number of projectiles (ball shot) or a single projectile for each pull of the trigger, and shall include any such weapon which may be readily restored to fire a fixed shotgun shell.

27 U.S.C. § 5845(c)-(d) (emphasis added).

15.     In 1968, Congress enacted the Gun Control Act, 18 U.S.C. §§ 921, *et seq.* ("GCA"), which sought to impose a comprehensive regulatory scheme on the importation, manufacturing, and sale of firearms.  The GCA established certain requirements for the sale of firearms that came within the purview of this Act.

16.     Under the GCA, "rifles" and "shotguns" are defined as follows:

The term "rifle" means a weapon designed or redesigned, made or remade, and intended to be fired from the shoulder and designed or redesigned and made or remade to use the energy of an explosive to fire only a single projectile through a **rifled bore** for each single pull of the trigger.

. . . .

The term "shotgun" means a weapon designed or redesigned, made or remade, and intended to be fired from the shoulder and designed or redesigned and made or remade to use the energy of an explosive to fire through a **smooth bore** either a number of ball shot or a single projectile for each single pull of the trigger.

18 U.S.C. § 921(a)(5), (7) (emphasis added).

17.      Under the GCA, a "short-barreled shotgun" is defined as: "a shotgun having one or more barrels less than eighteen inches in length and any weapon made from a shotgun (whether by alteration, modification, or otherwise) if such a weapon as modified has an overall length of less than twenty-six inches." 178 U.S.C. § 921(a)(6).

## II.      State Firearms Laws

18.      The terms "rifle" and "shotgun" are also defined under New Jersey law:

"Rifle" means any firearm designed to be fired from the shoulder and using the energy of the explosive in a **fixed metallic cartridge** to fire a single projectile through a **rifled bore** for each single pull of the trigger.

"Shotgun" means any firearm designed to be fired from the shoulder and using the energy of the explosive in a **fixed shotgun shell** to fire through a **smooth bore** either a number of ball shots or a single projectile for each pull of the trigger, or any firearm designed to be fired from the shoulder, which **does not fire fixed ammunition.**

N.J. Stat. Ann. §§ 2C:39-1m, -1n (emphasis added)

19.      New Jersey defines a "sawed-off-shotgun" as "any shotgun having a barrel or barrels of less than 18 inches in length measured from the breech to the muzzle, or a rifle having a barrel or barrels of less than 16 inches in length measured from the breech to the muzzle, or any firearm made from a rifle or a shotgun, whether by alteration, or otherwise, if such firearm as modified has an overall length of less than 26 inches." N.J. Stat. Ann. § 2C:30-1o.

## III.      Franklin Armory's Reformation

20.      Franklin Armory manufactures firearms and firearm parts, and one of the firearms it manufactures is the Reformation®:



Figure 1 - Reformation® RS7™          Figure 2 – Reformation® Rs11™

21.     The Reformation® is unique in its design and characteristics in that it is designed and intended to expel a single projectile through an unrifled barrel that has straight-cut lands-and-grooves.

22.     Significantly, the Reformation® is neither designed, nor intended, to fire fixed shotgun shells through its patented barrel system with straight lands and grooves.  Rather, the Reformation® is designed and intended to fire standard cartridge ammunition of the size and caliber for which each barrel is chambered.

23.     In 2018, the Reformation® was submitted to the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("BATF") to evaluate the firearm design for purposes classifying the Reformation®.

24.     As a result of the unique features of the Reformation® (no rifled bore and no utilization of a fixed shotgun shell), BATF classified it is a "firearm" that is not regulated under the NFA.

25.     Instead, the Reformation® met the definition of a "shotgun" and a "short-barreled" shotgun under the GCA.  Thus, the Reformation® is subject to the GCA *only* and can be sold in the general channels of interstate commerce subject to that Act's requirements and state law.

**IV.    Franklin Armory's Attempt to Sell the Reformation® in New Jersey**

26.     Having reviewed the applicable firearms laws of the State of New Jersey, Franklin Armory determined that the Reformation® could legally be sold through federally licensed firearms retailers in the State of New Jersey.

27.     As such, Franklin Armory intended to begin selling the Reformation® in New Jersey in April 2019 and had taken steps to commence the transfer of these firearms, which included communications, and entering into at least one sales contract, with New Jersey firearms retailers.

28.     Upon information and belief, at least one such New Jersey firearms retailer contacted the New Jersey State Police regarding the legality of selling the Reformation®.

29.     Upon information and belief, Detective J. Hearne advised this firearms retailer that the Reformation® "would be eligible for sale" in New Jersey and that the Reformation® "currently fits within the laws of the state as legal."

30.     Nonetheless, Detective Hearne contacted Franklin Armory to request a formal letter describing the characteristics of the Reformation®, and Franklin Armory complied with this request.

31.     Franklin Armory also advised Detective Hearne that it intended to commence distribution to licensed dealers in New Jersey unless it was advised of a relevant state statute or regulation that prohibited such sales.

32.     On or about April 3, 2019, Detective Sergeant First Class ("DSFC") Brett Bloom, Assistant Head for the Firearms Investigation Unit, again confirmed via written correspondence that the sale of the Reformation® was legal under New Jersey law.

33.     Although confirming the legality of such sales, DSFC expressed concern that law enforcement may mistake the Reformation® for an "assault weapon" or a "sawed off shotgun" under New Jersey law, which would lead to the improper prosecution of individual purchasers. Therefore, DSFC explained that he had requested a legal opinion from the Office of the Attorney General and instructed Franklin Armory not to sell the Reformation® in New Jersey until receiving a written response.

34.     DSFC Bloom provided no authority for requiring Franklin Armory to halt sales of a legal product and terminate business with New Jersey firearms dealers until being further advised by the Attorney General.

35.     DSFC Bloom also provided no deadline for, or even an estimated timeline of,  when Franklin Armory could expect to reengage in lawful commerce with sales of the Reformation®.

36.     Nonetheless, Franklin Armory agreed to temporarily delay sales into New Jersey so that the Office of Attorney General could provide a written response to DSFC Bloom's request.

37.     While waiting for the written response, on or about April 26, 2019, Franklin Armory was advised by at least one licensed firearms dealer in New Jersey with whom it had contracted to sell the Reformation® that the New Jersey State Police had contacted the store, and based on that contact,  the retailer cancelled its order.

38.     Having received no response after a period of thirty days from the initial inquiry, Franklin Armory again contacted the State Police and advised that it would begin sales on April 29, 2019.

39.     In response, DSFC Bloom prohibited Franklin Armory from making any sales of the Reformation® within the State of New Jersey:  "[T]he sale of the firearms in question **will not occur in the State** until we have heard from our legal counsel.  We will advise all licensed retail firearms dealers in the State to suspend any sales of this product, until the Attorney Generals [sic] office has made a final determination on the legality of the product" (emphasis added).

40.     The State of New Jersey has no statute, regulation, or provision that grants, authorizes, or empowers the Attorney General, the New Jersey State Police, or Bloom as the Assistant Unit Head for the Firearms Investigation Unit with the discretion to unilaterally, and without due process, block, interfere with, terminate, or otherwise disrupt the sale of a lawful firearm.

41.     After waiting weeks, Franklin Armory's corporate attorney contacted Deputy Attorney General MaryBeth Woods via telephone to discuss the unlawfulness of Bloom's interference.

42.     Thereafter, on or about July 17, 2019, Lt. Stephen Mazzagatti of the New Jersey State Police responded in a letter that both contradicted the previous responses from the State Police and misapplied State law.  Specifically, Mazzagatti arbitrarily and capriciously stated that the Reformation® firearms have the "characteristics of shotguns" because: (1) the barrels are not rifled, (2) the firearms are designed to be fired from the shoulder; and (3) the firearms fire a single projectile for each pull of the trigger.

43.     However, Lt. Mazzagatti omitted a requisite element in order for a firearm to be deemed a "shotgun" under New Jersey law, which states:

> "Shotgun" means any [1] firearm designed to be *fired from the shoulder* and [2] *using the energy of the explosive **in a fixed shotgun shell*** [3] to fire through a *smooth bore* [4] either a number of ball shots or *a single projectile for each pull of the trigger*, or any firearm designed to be fired from the should which does not fire fixed ammunition.

N.J. Stat. Ann. 2C:39-1 (numbering and emphasis added).

44.     As such, Lt. Mazzagatti not only misapplied the definition of "shotgun" but also directly contradicted the prior responses from the State Police, which had already determined (citing N.J.S.A. 2c:39-1.w.(3)) that the firearms each have a "barrel length of less than 18 inches measured from the breach to the muzzle" and do not use the energy of the explosive in a "fixed shotgun shell."

45.     Further, Mazzagatti's letter went on to compound the misapplication of the law by stating: "[a]s a shotgun, under N.J.S.A. 2C:39-1.n, a barrel length of less than eighteen inches

measured from the breech to the muzzle is considered a 'sawed off shotgun.'' The definition of "sawed-off shotgun," however, only applies to "shotguns." See N.J.S.A. 2C:39.1.0.

46. Finally, Mazzagatti's letter incorrectly implies that the Reformation® line qualifies as "assault weapons" under N.J.S.A. 2C:39-1w(3), which – again – applies only to "shotguns."

## V.    Notice of Intent to Commence Litigation

47. On or about July 24, 2019, the undersigned sent a Notice of Claim Under the Jersey Torts Claims Act on behalf of Plaintiff. (Ex. A.)

48. After the expiration of ninety days from the date the notice of claim is received by the contracting agency, the claimant may file suit in a court of competent jurisdiction of the State of New Jersey. N.J.S.A. 59:13-5. Under N.J.S.A. 59:8-11, the Claim shall be deemed to have been presented and received at the time of the deposit.

49. The required ninety days has now elapsed without any response from Defendants. As a result of Defendants' actions, Franklin Armory continues to be barred from engaging in lawful commerce within the State of New Jersey and continues to suffer damages to its business, reputation, and marketability of its products.

50. Defendants utilized the color of authority of the law to continually, improperly, and unreasonably prohibit firearm retailers within the State of New Jersey from purchasing and selling a lawful product, instead suggesting that non-licensed individuals who purchase a lawful product may be subject to prosecution.

51. Through their conduct, Defendants have attempted to perpetually prevent the sale of a legal production without legal justification or authority.

52. Plaintiff has been further damaged by cancelled sales, contracts, and the inability to lawfully sell its products within the State of New Jersey.

## COUNT I
## Declaratory Judgment (28 U.S.C. § 2201)

53.     Plaintiff restates and realleges the allegations contained in paragraphs 1 to 52 as if fully set forth herein.

54.     Plaintiff is a person entitled to protection under the Fourteenth Amendment.

55.     Defendants' finding of the Reformation® to be a regulated "shotgun" under New Jersey law, instruction to Plaintiff to halt all sales in New Jersey, and instruction to New Jersey firearms dealers not to sell the Reformation® are in violation of and contrary to the protections afforded persons under the Due Process Clause in the Fourteenth Amendment to the United States Constitution.

56.     Defendants have cited no applicable law (federal or state) to justify their actions in preventing the lawful sale of a lawful product within the State of New Jersey.

57.     Defendants' correspondence, which contradicted prior findings and was based on a misapplication of the law and is unsupported by the federal and state statutes' definitions of shotgun, sawed-off shotgun, and assault weapon.  As a result, the actions taken by the Defendants to prevent the lawful sale of a lawful product in the State of New Jersey exceeds Defendants' statutory authority.

58.     Moreover, Defendants' decision and instructions are arbitrary and capricious and constitute an abuse of discretion and/or is otherwise not in accordance with the law.

59.     The Defendants' conduct and actions also violate the Second and Fourteenth Amendments to the United States Constitute to keep and bear arms because it bans the manufacture, sale, and possession of lawful firearms.

60.     The legality of the conduct of Defendants constitutes a question of law.

61.     There is an actual dispute between the parties over whether Defendants' conduct is proper under the Fifth and Fourteenth Amendments and under the statutory authority granted by the Legislature.  As a result, declaratory relief is appropriate under 28 U.S.C. § 2201.

## COUNT II
## Declaratory Judgment (42 U.S.C. § 1983)

62.     Plaintiff restates and realleges the allegations contained in paragraphs 1 to 61 as if fully set forth herein.

63.     Plaintiff is a person entitled to protection under the Fourteenth Amendment.

64.     Defendants' finding of the Reformation® to be a regulated "shotgun" under New Jersey law, instruction to Plaintiff to halt all sales in New Jersey, and instruction to New Jersey firearms dealers not to sell the Reformation® are in violation of and contrary to the protections afforded persons under the Due Process Clause in the Fourteenth Amendment to the United States Constitution.

65.     Defendants have cited no applicable law (federal or state) to justify their actions in preventing the lawful sale of a lawful product within the State of New Jersey.

66.     Defendants' correspondence, which contradicted prior findings and was based on a misapplication of the law, is unsupported by the federal and state statutes' definitions of shotgun, sawed-off shotgun, and assault weapon.  As a result, the actions taken by the Defendants to prevent the lawful sale of a lawful product in the State of New Jersey exceeds Defendants' statutory authority.

67.     Moreover, Defendants' decision and instructions are arbitrary and capricious and constitute an abuse of discretion and/or is otherwise not in accordance with the law.

68.     The Defendants' conduct and actions also violate the Second and Fourteenth Amendments to the United States Constitute to keep and bear arms because it bans the manufacture, sale, and possession of lawful firearms.

69.     The legality of the conduct of Defendants constitutes a question of law.

70.     There is an actual dispute between the parties over whether Defendants' conduct is proper under the Fifth and Fourteenth Amendments and under the statutory authority granted by the Legislature.  As a result, declaratory relief is appropriate under 28 U.S.C. § 1983.

**COUNT III**
**Tortious Interference With a Prospective Economic Advantage**

71.     Plaintiff restates and realleges the allegations contained in paragraphs 1 to 70 as if fully set forth herein.

72.     Plaintiff had a protectable interest in the sale of its lawful product to licensed New Jersey firearms dealers.

73.     Without justification, Defendants intentionally or negligently interfered in these transactions by, among other things, contacting licensed dealers and advising them not to purchase a lawful product; instructing Plaintiff not to sell its lawful product in New Jersey; and intentionally misapplying state law in order to prevent the lawful transactions at issue.  Defendant's conduct in this regard constitutes malice.

74.     Defendants' actions were taken with the reasonable likelihood that this interference will cause the loss of a prospective gain.  Plaintiff has been unlawfully and unreasonably prevented from selling its products in the State of New Jersey.

75.     As a result of Defendants' conduct, Plaintiff has been caused to sustain damages, which includes, among other things, loss of revenue, lost profits, cancellation of sales, loss of reputation, and storage expenses.  These damages are continuing.

## COUNT IV
## Tortious Interference With a Contract

76.     Plaintiff restates and realleges the allegations contained in paragraphs 1 to 75 as if fully set forth herein.

77.     Plaintiff had contracted with licensed firearms dealers in the State of New Jersey for the sale of the Reformation®.

78.     Defendants were not a party to the contracts that were formed.

79.     Defendants intentionally and/or negligently interfered with the contracts in the manners described above, which included:  improperly restricting Plaintiff from lawfully selling its product in the State of New Jersey, advising retailers not to sell the product, contacting retailers to instruct them not to sell the product, misapplying the law in order to prevent the lawful sales, and prohibiting Plaintiff from selling the Reformation® within the State of New Jersey.

80.     Defendants had no justification for the aforementioned intentional interference.

81.     Defendants' conduct caused Plaintiff to sustain damage, including lost profits, loss of business, lost revenue, loss of reputation, and storage fees.  These damages are continuing.

## COUNT V
## Defamation

82.      Plaintiff restates and realleges the allegations contained in paragraphs 1 to 81 as if fully set forth herein.

83.     Upon information and belief, Defendants communicated with third-parties (New Jersey licensed retailers) and advised them that (1) the Reformation® was prohibited and/or illegal; (2) the sales of the Reformation® should be suspended; and/or (3) approval from the Attorney General was required prior to Plaintiff being allowed to sell the Reformation® into New Jersey.

84.     These defamatory statements, which concerned Plaintiff and Plaintiff's business and were communicated to retailers, were and are false.  In making these statements, Defendants were at fault and acted negligently.

85.     As a result of these statements, Plaintiff has been damaged by, among other things, preventing the sales of lawful products into New Jersey; impugning Plaintiff's reputation and goodwill as a firearms manufacturer and seller; and improperly questioning the legality of Plaintiff's business and products.  Plaintiff's reputation and ability to market and sell its products, including the Reformation®, has been negatively impacted.  These damages are continuing.

## COUNT VI
## Defamation Per Se

86.     Plaintiff restates and realleges the allegations contained in paragraphs 1 to 85 as if fully set forth herein.

87.     Upon information and belief, Defendants communicated with third-parties (New Jersey licensed retailers) and advised them that (1) the Reformation® was prohibited and/or illegal; (2) the sales of the Reformation® should be suspended; and/or (3) approval from the Attorney General was required prior to Plaintiff being allowed to sell the Reformation® into New Jersey.

88.     Such statements constitute negligence per se because, among other things, they charge Plaintiff with violating the law by selling the Reformation® into New Jersey and affect Plaintiff's business, trade, profession, and office.

89.     As a result of these statements, Plaintiff has been damaged by, among other things, preventing the sales of lawful products into New Jersey; impugning Plaintiff's reputation and goodwill as a firearms manufacturer and seller; and improperly questioning the legality of Plaintiff's business and products.  Plaintiff's reputation and ability to market and sell its products, including the Reformation®, has been negatively impacted.  These damages are continuing.

## COUNT VII
## Civil Conspiracy

90.     Plaintiff restates and realleges the allegations contained in paragraphs 1 to 89 as if fully set forth herein.

91.     Defendants, acting together and through their agents, acted in concert to inflict a wrong against Plaintiff.  Specifically, Defendants prevented Plaintiff from lawfully selling a lawful product without justification or legal basis; advised retailers in the State of New Jersey not to purchase Plaintiff's product without justification or legal basis; and misapplied and misconstrued the laws in order to prevent Defendant from lawfully selling its product within the State of New Jersey.

92.     As a result of Defendants' conduct, Plaintiff has been caused to sustain damages, which includes, among other things, loss of revenue, lost profits, cancellation of sales, and storage expenses.  These damages are continuing.

## COUNT VIII
## 42 U.S.C. § 1983 Claim

93.     Plaintiff restates and realleges the allegations contained in paragraphs 1 to 92 as if fully set forth herein.

94.     Defendants, individually and collectively, acting together under color of state law deprived Plaintiff of a federally secured right.

95.     As recounted above, under color state law, Defendants violated 32 U.S.C. § 1983 by instructing federally licensed firearms dealers that selling the Reformation® was illegal or prohibited; instructing Plaintiff to cease all sales or transfers of the Reformation® into New Jersey without any legal basis for doing so; prohibiting Plaintiff from selling the Reformation® until the

Attorney General provided a written authorization, which is not a legal requirement; and misapplying state law in order to prevent the lawful sale of a lawful product in New Jersey.

96.     Plaintiff has therefore been deprived of liberty and property without due process of law.

## DEMAND

WHEREFORE, Plaintiff respectfully request judgment against Defendants and that the Court grant the following relief:

A.  After a hearing on the merits, a judgment in Plaintiff's favor, declaring that (1) the Reformation® can be legally sold and transferred within the State of New Jersey; (2) the acts and conduct of Defendants in attempting to restrict, prohibit, or prevent the sale of the Reformation® was unconstitutional; (3) the acts and conduct of Defendants as described herein violated the Second and Fourteenth Amendments to the United States Constitution; (4) Defendants violated 42 U.S.C. § 1983; and (5) a permanent injunction should be issued enjoining Defendants from attempting to restrict the sale of lawful firearms into the State of New Jersey.

B.  Awarding all possible damages.

C.  Awarding pre-judgment and post-judgment interest.

D.  Awarding statutory damages as permitted by law.

E.  Awarding attorneys' fees and costs.

F.  Awarding such other relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury as to all issues so triable.

Dated:  October 24, 2019

Respectfully submitted,

**PISCIOTTI MALSCH**

By:    s/ Danny C. Lallis
          Danny C. Lallis
          Danielle J. Reiss
          30 Columbia Turnpike, Suite 205
          Florham Park, New Jersey 07932
          Telephone:  (973) 245-8100
          Facsimile:   (973) 245-8101
          dlallis@pmlegalfirm.com
          dreiss@pmlegalfirm.com

          **Attorneys for Plaintiff**
          **Franklin Armory, Inc.**