| | |
|---|---|
| FRANKLIN ARMORY, INC., | UNITED STATES DISTRICT COURT DISTRICT OF NEW JERSEY TRENTON VICINAGE |
| Plaintiff, | |
| v. | |
| STATE OF NEW JERSEY, NEW JERSEY STATE POLICE, ATTORNEY GENERAL OF THE STATE OF NEW JERSEY, GURBIR GREWAL, NEW JERSEY DEPARTMENT OF LAW AND PUBLIC SAFETY, PATRICK A. CALLAHAN, and JOHN DOES 1-10 | CIVIL ACTION No. 19-19323 (FLW/ZNQ) |
| Defendants. | |

BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

GURBIR S. GREWAL
ATTORNEY GENERAL OF NEW JERSEY
R.J. Hughes Justice Complex
P.O. Box 112
Trenton, New Jersey 08625
(609) 376-2948
*Attorney for Defendants State of New Jersey, New Jersey State Police, Attorney General of the State of New Jersey, New Jersey Department of Law and Public Safety, Callahan, and Grewal*

MICHAEL VOMACKA
Deputy Attorney General
    On the Brief

SUZANNE DAVIES
Deputy Attorney General
    On the Brief

**TABLE OF CONTENTS**

**PAGE**

PRELIMINARY STATEMENT..............................................1

FACTUAL AND PROCEDURAL HISTORY....................................2

STANDARD OF REVIEW...............................................6

ARGUMENT

      POINT I

      THE SECOND AMENDMENT DOES NOT CREATE AN INDEPENDENT
      RIGHT FOR FRANKLIN ARMORY TO SELL THE REFORMATION,
      AND PROHIBITING THE SALE OF SAWED-OFF SHOTGUNS DOES
      NOT BURDEN CONDUCT PROTECTED BY THE SECOND
      AMENDMENT....................................................8

      POINT II

      THE FIFTH AMENDMENT DOES NOT APPLY DIRECTLY TO
      STATE GOVERNMENT ACTORS....................................11

      POINT III

      FRANKLIN ARMORY'S DUE PROCESS CLAIMS SHOULD BE
      DISMISSED BECAUSE DEFENDANTS' ACTIONS DO NOT "SHOCK
      THE CONSCIENCE"............................................12

      POINT IV

      ANY CLAIMS FOR MONETARY DAMAGES AGAINST THE STATE,
      ITS AGENCIES, AND ITS EMPLOYEES IN THEIR OFFICIAL
      CAPACITIES UNDER 42 U.S.C. § 1983 MUST BE DISMISSED
      BECAUSE THESE CLAIMS ARE BARRED BY THE ELEVENTH
      AMENDMENT, AND STATE EMPLOYEES ARE NOT "PERSONS"
      AMENABLE TO SUIT..........................................15

            A. Plaintiff's 42 U.S.C. § 1983 Claim Against
               Defendants In Their Official Capacity Is
               Barred By The Eleventh Amendment..................15

            B. Defendants Are Not "Persons" Amenable To
               Suit Under 42 U.S.C. § 1983.....................16

i

POINT V

FRANKLIN ARMORY FAILS TO ESTABLISH THAT ATTORNEY
GENERAL GREWAL AND COLONEL PATRICK CALLAHAN HAD
PERSONAL INVOLVEMENT IN THE ALLEGED CONSTITUTIONAL
VIOLATIONS................................................17

POINT VI

COUNTS V AND VI SHOULD BE DISMISSED BECAUSE
FRANKLIN ARMORY HAS FAILED TO PLEAD DEFAMATION AND
DEFAMATION PER SE........................................18

    A. Plaintiff's defamation claims fail because
       State Police's letter pertains to a matter
       of public concern and does not allege actual
       malice. .........................................19

    B. Plaintiff's defamation claims fail because
       they are based on a statement of legal
       opinion. ........................................21

    C. Plaintiff's defamation per se claim also
       fails because it does not allege a statement
       with clear defamatory meaning. ..................23

POINT VII

COUNTS III AND IV SHOULD BE DISMISSED BECAUSE
PLAINTIFF HAS FAILED TO PLEAD TORTIOUS INTERFERENCE
WITH A CONTRACT/ECONOMIC ADVANTAGE AND THE STATE IS
IMMUNE FROM CONSEQUENTIAL OR PUNITIVE DAMAGES IN
CONTRACT CLAIMS.........................................24

CONCLUSION ................................................25

## TABLE OF AUTHORITIES

### CASES

Albright v. Oliver,
  510 U.S. 266 (1994)......................................... 12

Ashcroft v. Iqbal,
  129 S. Ct. 1937 (2009)............................... 6, 7, 17

Barows v. Chase Manhattan Mortg. Corp.,
  465 F.Supp. 2d 347 (D.N.J. 2006)........................... 24

Barron v. City of Baltimore,
  32 U.S. 243 (1833)......................................... 11

Bell Atl. Corp. v. Twombly,
  550 U.S. 544 (2007)........................................ 7

Binderup v. Attorney General United States of America,
  836 F.3d 336 (3d Cir. 2016)................................ 8

County of Sacramento v. Lewis,
  523 U.S. 833 (1998).................................... 12, 13

Dairy Stores, Inc. v. Sentinel Pub. Co.,
  104 N.J. 125 (N.J. 1986).............................. 20, 21

Durando v. Nutley Sun,
  209 N.J. 235 (N.J. 2012)................................... 19

District of Columbia v. Heller,
  554 U.S. 570 (2008).................................... 9, 10

Evans v. Sec'y Pa. Dep't of Corr.,
  645 F.3d 650 (3d Cir. 2011)................................ 13

Gittlemacker v. Prasse,
  428 F.2d 1 (3d Cir. 1970).................................. 17

Gray v. Press Commc'ns, LLC,
  342 N.J. Super. 1 (N.J. App. Div. 2001).................... 18

Hohl v. Mettler,
  62 N.J. Super. 62 (N.J. App. Div. 1960)................... 20

Hornberger v. Am. Broad. Companies, Inc.,
  351 N.J. Super. 577 (N.J. App. Div. 2002)............... 22, 22

In re Burlington Coat Factory Sec. Litig.,
  114 F.3d 1410 (3d Cir. 1997).................................. 4

K.L. v. Donio,
  2017 WL 490558 (N.J. Super. Ct. App. Div. Feb. 7, 2017)...... 22

Kentucky v. Graham,
  473 U.S. 159 (1985)......................................... 15

Lynch v. N.J. Educ. Ass'n,
  161 N.J. 152 (1999)..................................... 18, 23

Mangan v. Corp. Synergies Grp., Inc.,
  834 F.Supp. 2d 199 (D.N.J. 2011)........................ 18, 22

McClary v. O'Hare,
  786 F.2d 83 (2d Cir. 1986).................................. 15

McLaughlin v. Rosanio, Bailets & Talamo, Inc.,
  331 N.J. Super. 303 (N.J. App. Div. 2000)................... 23

McGowan v. New Jersey,
  No. CIVA08-5841(FLW), 2009 WL 1687663
  (D.N.J. June 16, 2009)...................................... 11

Miller v. Rutgers,
  619 F.Supp. 1386 (D.N.J. 1985).......................... 15, 16

Mont. Shooting Sports Ass'n v. Holder,
  No. CV-09-147-DWM-JCL, 2010 WL 3926029
  (D. Mont. Aug. 31, 2010)..................................... 9

N.E. for J.V. v. State Dep't of Children & Families, Div. of Youth
  & Family Servs.,
  449 N.J. Super. 379 (N.J. App. Div. 2017)................... 21

Paul v. United Parcel Serv.,
  2005 WL 3307268 (D.N.J. Dec. 6, 2005)...................... 18

Pennhurst State School and Hosp. v. Halderman,
  465 U.S. 89 (1984).......................................... 15

Prima v. Darden Restaurants, Inc.,
  78 F.Supp. 2d 337(D.N.J. 2000)................................ 24

Printing Mart-Morristown v. Sharp Elecs. Corp.,
  116 N.J. 739 (N.J. 1989)..................................... 24

Quern v. Jordan,
  440 U.S. 332 (1979).......................................... 15

Read v. Profeta,
  397 F.Supp. 3d 597 (D.N.J. 2019)............................. 22

Rochin v. California,
  342 U.S. 165 (1952).......................................... 13

Romaine v. Kallinger,
  109 N.J. 282 (N.J. 1988)..................................... 23

Sameric Corp. of Delaware v. City of Phila.,
  142 F.3d 582 (3d Cir. 1998).................................. 12

Senna v. Florimont,
  196 N.J. 469 (N.J. 2008)................................. 19, 20

State v. Cunningham,
  186 N.J. Super. 502(App. Div. 1982)......................... 20

Steele v. Cicchi,
  855 F.3d 494 (3d Cir. 2017).................................. 12

Taj Mahal Travel, Inc. v. Delta Airlines Inc.,
  164 F.3d 186 (3d Cir. 1998).................................. 18

Teixeira v. County of Alameda,
  873 F.3d 670 (9th Cir. 2017).................................. 9

Turf Lawnmower Repair, Inc. v. Bergen Record Corp.,
  139 N.J. 392 (1995).......................................... 19

United States v. Chafin,
  423 Fed. Appx. 342 (4th Cir. 2011)............................ 9

United States v. Marzzarella,
  614 F.3d 85 (3d Cir. 2010)....................... 1, 8, 9, 11

United States v. Miller,
  307 U.S. 174 (1939)...................................... 10, 11

v

Van Engelen v. O'Leary,
 323 N.J.Super. 141 (N.J. App. Div. 1999)..................... 24

Velop, Inc. v. Kaplan,
 301 N.J.Super. 32 (N.J. App. Div. 1997)..................... 23

Will v. Michigan Dept. of State Police,
 491 U.S. 58 (1989)......................................... 15


**STATUTES**

28 U.S.C. § 2201............................................... 5

42 U.S.C. §  1983......................................... PASSIM

N.J.A.C § 13:54-1.1, <u>et seq</u>................................... 19

N.J.S.A. 2C:39-1, <u>et seq</u>.................................. 10, 19

N.J.S.A. 2C:58-1, <u>et seq</u>..................................... 19

N.J.S.A. 59:13-3.............................................. 24


**RULES**

<u>Fed. R. Civ. P.</u> 12(b)(6)....................................... 6

<u>Fed. R. Civ. P.</u> 8(a)(2)........................................ 7

**CONSTITUTIONAL PROVISIONS**

Second Amendment........................................ PASSIM

Eleventh Amendment...................................... PASSIM

Fifth Amendment......................................... PASSIM

Fourteenth Amendment.................................... PASSIM

## PRELIMINARY STATEMENT

Plaintiff, Franklin Armory, a manufacturer of firearms, inquired with New Jersey State Police's Firearms Investigation Unit ("State Police") whether its new firearm product "the Reformation" is legal under New Jersey's gun laws.  In a letter dated July 17, 2019 ("July 17th Letter"), the State Police opined that the Reformation was not. In doing so, the State Police expressly stated that its opinion was offered "for informational purposes only." Plaintiff now asserts the State Police's "conduct and actions" violate the Second Amendment "because it bans the manufacture, sale, and possession of lawful firearms." But Plaintiff's claim is fatally flawed. The Second Amendment does not confer upon Plaintiff, a manufacturer of firearms, a right to manufacture or sell arms.

Even assuming that the Second Amendment confers such a right upon Franklin Armory, the July 17th letter merely opines that the characteristics of the Reformation do not meet the statutory requirements of legal shotguns in New Jersey.  In other words, the Reformation is considered a sawed-off shotgun under New Jersey law. It has been long established that the prohibition of sawed-off or short-barreled shotguns does not burden conduct protected by the Second Amendment.  The Supreme Court so ruled more than eighty years ago. And, in United States v. Marzzarella, 614 F.3d 85, 94-95 (3d Cir. 2010), the Third Circuit recognized that the

1

Second Amendment does not protect short-barreled shotguns or other dangerous and unusual weapons. As a sawed-off shotgun, the Reformation does not enjoy protection under the Second Amendment.

Plaintiff also alleges that the State Police's action violates the Due Process Clause. But the State Police's July 17th Letter does not violate the substantive component of the Due Process Clause as the mere act of responding to Plaintiff's inquiry falls far short of "shocking the conscience."

Franklin Armory's State common law tort claims are also deficient as it fails to plead sufficient allegations to support them. Specifically, Franklin Armory's defamation claims fail because the regulation of firearms is a matter of public concern, the company fails to allege actual malice on the part of the Defendants, the allegation is based on a statement of legal opinion, and the company fails to allege a statement with a defamatory meaning. Additionally, Franklin Armory's claims of tortious interference should be dismissed because the claims contain nothing more than conclusory allegations.

## FACTUAL AND PROCEDURAL HISTORY

Franklin Armory is a Nevada corporation licensed to manufacture firearms and firearm parts. See Pl. Compl. at ¶ 6. In or about 2018, Franklin Armory designed a firearm called the "Reformation." Id. at ¶¶ 20-23. In 2018, the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("BATF") classified the

Reformation as a "firearm."  <u>Id.</u> at ¶¶ 23-24.  After reviewing New Jersey firearms laws, Franklin Armory believed it could legally sell the Reformation through federally licensed firearm retailers in the State of New Jersey.  <u>Id.</u> at ¶ 26-27.  In April 2019, Franklin Armory took steps to sell the Reformation in New Jersey, including entering into "at least one" sales contract for the Reformation with a New Jersey firearms retailer.  <u>Ibid.</u>

Subsequently, a New Jersey firearms retailer reached out to the State Police inquiring as the legality of selling the Reformation in New Jersey.  <u>Id.</u> at ¶ 28.  Detectives J. Hearne and Brett Bloom of the State Police initially stated that they believed the sale of the Reformation was legal, but expressed concerns that the Reformation could be classified as an illegal assault weapon or sawed-off shotgun under New Jersey law.  <u>Id.</u> at ¶¶ 29-33. Detective Bloom expressed concerns that this could lead to the improper prosecution of individual purchasers of the Reformation, and requested legal advice from the Office of the Attorney General as to the legality of the Reformation.  <u>Id.</u> at ¶ 33.  Detective Bloom advised Franklin Armory not to sell the Reformation in New Jersey until the legality of the firearm was analyzed to avoid the concerns of wrongful prosecution of New Jersey citizens.  <u>Ibid.</u>

Before receiving a response, Franklin Armory contacted the State Police and advised that it would begin sales of the Reformation on April 20, 2019.  <u>Id.</u> at ¶ 38.  Detective Bloom

again advised Franklin Armory against the sale of the Reformation until the legality of the firearm was further considered. Id. at ¶ 39. Detective Bloom further advised that if Franklin Armory proceeded with the sales, the State Police would advise New Jersey retailors to suspend sales of the Reformation until the Attorney General make a final determination on the legality of the product. Ibid.

Subsequently, Franklin Armory's counsel contacted Deputy Attorney General MaryBeth Woods via telephone to discuss the issue. Id. at ¶ 41. Next, Franklin Armory also sent a letter to the State Police asking for an analysis of the Reformation under New Jersey law. See Exhibit A, letter to Jay Jacobson from Lieutenant Stephen Mazzagatti, dated July 17, 2019.[1] On or about July 17, 2019, Lieutenant Stephen Mazzagatti stated that the Reformation appeared to meet the characteristics of a "shotgun" under New Jersey law because: (1) the barrel was not rifled; (2) it was designed to be

---

[1]   Defendants submit the July 17, 2019 letter, which is selectively quoted in the Complaint, and forms the crux of the Complaint, for consideration by the court. Generally, a motion to dismiss is based upon the content of the pleading in and of itself, and the court may not consider matters extraneous to the pleadings. In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997). "However, an exception to the general rule is that a 'document integral to or explicitly relied upon in the complaint' may be considered 'without converting the motion [to dismiss] into one for summary judgment.'" Ibid. (quoting Shaw v. Digital Equip. Corp., 82 F.3d 1194, 1220 (1st Cir. 1996). Here, the letter is integral and explicitly relied upon in the complaint as the basis for the company's allegations of unlawful conduct by Defendants.

fired from the shoulder; and (3) it fires a single projectile for each pull of the trigger.  Id. at ¶ 42.  Additionally, Mazzagatti advised that the characteristics of the Reformation, as a shotgun, did not meet the statutory requirements of a legal shotgun in New Jersey because: (1) the length of the barrel is less than eighteen inches, meaning the Reformation was a "sawed-off shotgun;" and (2) the magazine capacity was greater than six rounds, making the Reformation an assault weapon.  See Ex. A.

Mazzagatti specifically advised that this information was not intended as legal advice, but was "offered for informational purposes only."  Ibid.  Mazzagatti further advised Franklin Armory to consult with a licensed attorney in the State of New Jersey for legal advice regarding firearms and firearm sales in New Jersey. Ibid.

In its Complaint, Franklin Armory alleges Mazzagatti misapplied New Jersey law as to the definition of "shotgun."  Id. at ¶¶ 44-46.  Essentially, Franklin Armory disputes, that the Reformation is a shotgun and as such, contends it can be legally sold in New Jersey.  As a result, Franklin Armory seeks declaratory judgment under 28 U.S.C. § 2201, alleging that Defendants' determination that sale of the Reformation is illegal under New Jersey law violates the Due Process Clause of the Fourteenth Amendment, the Second Amendment right to keep and bear arms, and the Fifth Amendment.  Id. at ¶¶ 53-70.  Franklin Armory also

asserts common-law tort claims of tortious interference with a prospective economic advantage and contract. Id. at ¶¶ 71-81. Under these claims, Franklin Armory seeks damages, which include "among other things, loss of revenue, lost profits, cancellation of sales, loss of reputation, and storage expenses." Id. at ¶¶ 75, 81.

Further, Franklin Armory asserts claims for defamation based on New Jersey State Police's contact with New Jersey licensed retailers, allegedly advising that approval from the Attorney General was required prior to sale of the Reformation. Id. at ¶ 83. Lastly, Franklin Armory asserts a civil conspiracy claim, alleging that Defendants acted together to prevent Franklin Armory from selling a lawful product, and asserts other unspecified claims under 42 U.S.C. § 1983. Id. at ¶¶ 90-96.

## STANDARD OF REVIEW

There are two working principles underlying the motion to dismiss standard, under Fed. R. Civ. P. 12(b)(6). First, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Ashcroft v. Iqbal, 556 U.S. 662 (2009). Instead, legal conclusions "must be supported by factual allegations" in order to be "entitled to the assumption of truth." Id. at 679.

Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss." Id.; see also Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). Whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679. A claim is plausible on its face when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 678 (citing Twombly, 550 U.S. at 556). This standard is not a probability requirement, but it "asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678.

In other words, a complaint that pleads facts "merely consistent with a defendant's liability" raises the possibility that the defendant is liable for the alleged misconduct, but "stops short of the line" of plausibility required for entitlement to relief. Id.; see Fed. R. Civ. P. 8(a)(2). When the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not shown - that the pleader is entitled to relief." Iqbal, 556 U.S. at 678 (citing Fed. R. Civ. P. 8(a)(2)) (quotations omitted).

**ARGUMENT**

**POINT I**

**THE SECOND AMENDMENT DOES NOT CREATE AN INDEPENDENT RIGHT FOR FRANKLIN ARMORY TO SELL THE REFORMATION, AND PROHIBITING SAWED-OFF SHOTGUNS DOES NOT BURDEN CONDUCT PROTECTED BY THE SECOND AMENDMENT.**

Because the Second Amendment does not create a right for Franklin Armory to manufacture or sell any firearm, the July 17th Letter does not impose a burden on conduct falling within the scope of the Second Amendment's guarantee. Accordingly, Franklin Armory's assertion that the State Defendants' "conduct and actions" violate the Second Amendment "because it bans the manufacture, sale, and possession of lawful firearms," Pl. Comp at ¶ 59, is without merit.

When considering a Second Amendment challenge, courts in the Third Circuit engage in a two-step analysis. See United States v. Marzzarella, 614 F.3d 85, 89 (3d Cir. 2010); Binderup v. Attorney General United States of America, 836 F.3d 336, 356 (3d Cir. 2016) (en banc) ("the following is the law of our Circuit: [] the two-step Marzzarella framework controls all Second Amendment challenges"). First, courts must "ask whether the challenged law imposes a burden on conduct falling within the scope of the Second Amendment's guarantee." Marzzarella, 614 F.3d at 89. "If it does not, [the] inquiry is complete." Ibid. If a challenged law does

impose such a burden, a court must then "evaluate the law under some form of heightened scrutiny." See id. at 96-97.

Here, Franklin Armory's challenge cannot survive the first step of the Marzzarella test because the Second Amendment does not confer a right to manufacture or sell arms. The Ninth Circuit has held that the Second Amendment "does not independently protect a proprietor's right to sell firearms." Teixeira v. County of Alameda, 873 F.3d 670, 690 (9th Cir. 2017); see also United States v. Chafin, 423 Fed. Appx. 342, 344 (4th Cir. 2011) (noting that no historical authority "suggests that, at the time of its ratification, the Second Amendment was understood to protect an individual's right to sell a firearm"); Mont. Shooting Sports Ass'n v. Holder, No. CV-09-147-DWM-JCL, 2010 WL 3926029, at *21 (D. Mont. Aug. 31, 2010) (citing District of Columbia v. Heller, 554 U.S. 570 (2008)) ("Heller said nothing about extending Second Amendment protection to firearm manufacturers or dealers. If anything, Heller recognized that firearms manufacturers and dealers are properly subject to regulation by the federal government under existing federal firearms laws"). Rather, the Second Amendment "confers a right on the 'people' who would keep and use arms, not those desiring to sell them." Teixeira, 873 F.3d at 683. Teixeira is consistent with Heller, which cautioned that its holding should not be taken to cast doubt on "laws imposing conditions and qualifications on the commercial sale of

arms." 554 U.S. at 626-627. Consistent therewith, Franklin Armory fails to cite to any case law in this Court or the Third Circuit holding that the Second Amendment confers upon a merchant or manufacturer a right to manufacture or sell arms.

Even assuming the Second Amendment confers such a right upon Franklin Armory, the July 17th Letter did not infringe upon rights protected by the Second Amendment because it merely applied statutes that prohibit dangerous and unusual weapons that are not protected under the Second Amendment. The Second Amendment right has never been "a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." <u>Heller</u>, 554 U.S. at 626 (internal citations omitted). Rather, "[a]t its core, the Second Amendment protects the right of law-abiding citizens to possess non-dangerous weapons for self-defense in the home," and thus, under <u>Heller</u>, "restrictions on the possession of dangerous and unusual weapons are not constitutionally suspect because these weapons are outside the ambit of the amendment." <u>Id.</u> at 625, 635. The Second Amendment's protection "does not extend to all types of weapons, only to those *typically* possessed by law-abiding citizens for lawful purposes." <u>Heller</u>, 554 U.S. at 625 (emphasis added) (interpreting <u>United States v. Miller</u>, 307 U.S. 174 (1939)).

N.J.S.A. 2C:39-1(o) and N.J.S.A. 2C:39-3(b), the primary statutes interpreted and applied to the Reformation in the July 17th letter, prohibit the possession of a "sawed-off Shotgun,"

(sometimes also referred to as a "short-barreled shotgun") which is a prohibition that the Supreme Court first held did not violate the Second Amendment more than eighty years ago. <u>Miller</u>, 307 U.S. at 178. <u>See also</u> <u>Marzzarella</u>, 614 F.3d at 94. (stating in relation to short-barreled shotguns that "the Supreme Court has made clear the Second Amendment does not protect those types of weapons") (internal citations omitted).  Thus, because the prohibition of sawed-off or short-barreled shotguns does not burden conduct protected by the Second Amendment, Franklin Armory's claim does not make it past step one of the <u>Marzzarella</u> framework and should be dismissed.

**POINT II**

**THE FIFTH AMENDMENT DOES NOT APPLY DIRECTLY TO STATE GOVERNMENT ACTORS.**

In Counts I and II, Franklin Armory alleges Fifth Amendment due process violations. However, the Due Process clause of the Fifth Amendment only applies to the federal government, not to State government actors.  <u>McGowan v. New Jersey</u>, No. CIVA08-5841(FLW), 2009 WL 1687663, at *7 (D.N.J. June 16, 2009) (citing <u>Barron v. City of Baltimore</u>, 32 U.S. 243 (1833)).  While portions of the Fifth Amendment have been incorporated into the Fourteenth Amendment in order to apply to States, the Fourteenth Amendment contains its own due process clause that obviates the need to incorporate the Fifth Amendment's Due Process Clause.  <u>U.S. Const.</u>

11

amend XIV.   Thus, Franklin Armory's claims under the Fifth Amendment should be dismissed.

### POINT III

**FRANKLIN ARMORY'S DUE PROCESS CLAIMS SHOULD BE DISMISSED BECAUSE DEFENDANTS' ACTIONS DO NOT "SHOCK THE CONSCIENCE."**

Franklin Armory's Fourteenth Amendment claims should be dismissed because Defendants' executive action of providing an informational letter does not rise to the level of "shocking the conscience" needed for a substantive due process violation. The Due Process Clause of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or properly without due process of law." The Due Process Clause confers both substantive and procedural rights. Albright v. Oliver, 510 U.S. 266, 272 (1994). "To establish a substantive due process claim, a plaintiff must prove that it was deprived of a protected property interest by arbitrary or capricious government action." Sameric Corp. of Delaware v. City of Phila., 142 F.3d 582, 590 (3d Cir. 1998). The substantive component "limits what [the] government may do regardless of the fairness of [the] procedures that it employs," Steele v. Cicchi, 855 F.3d 494, 501 (3d Cir. 2017) (citation omitted), "in order to 'guarantee protect[ion] against government power arbitrarily and oppressively exercised.'" Id. (quoting County of Sacramento v. Lewis, 523 U.S. 833, 846 (1998)).

12

Because the substantive due process protection limits what the government may do in both its legislative and its executive capacities, a different analysis is applicable depending on which capacity is implicated. Evans v. Sec'y Pa. Dep't of Corr., 645 F.3d 650, 659 (3d Cir. 2011). Here, the challenged conduct is executive because Franklin Armory's alleged injury arises not from a legislative act, but from the State Police's July 17th Letter opining that the Reformation was not a legal shotgun under New Jersey's firearm statutes.

When the challenged conduct is executive action, "the threshold question is whether the [governmental] behavior . . . is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." Lewis, 523 U.S. at 847 n.8. Governmental "conduct intended to injure" is the "most likely to rise to the conscience-shocking level" while injuries caused by deliberate indifference are a "closer call." Id. at 849. In Rochin v. California, 342 U.S. 165 (1952), the Supreme Court found that police officers' conduct of entering a suspect's home without a warrant, tackling him to the ground, struggling to open his mouth, and forcibly pumping his stomach after they believed the suspect swallowed narcotics, was conduct that "shocked the conscience" in violation of the Due Process clause. See also Marrero-Rodriguez v. Municipality of San Juan, 677 F.3d 497 (1st Cir. 2012)(allegations that plaintiff was fatally shot during

13

training when officer placed a firearm to plaintiff's unprotected back and fired when the plaintiff was face down, motionless, under control, and unarmed sufficiently shocked the conscience).

In contrast, here, the July 17th Letter in response to Franklin Armory's inquiry, does not rise to the level of conduct that courts have found to be egregious, outrageous, or shocking to the conscience resulting in a violation of due process.  The letter unequivocally states that it is not a legal opinion, and the analysis provided by the State Police was "for informational purposes only."  See Exhibit A.  Further, the letter recommends that the company seek legal advice from an attorney licensed in New Jersey for legal advice regarding firearm sales in New Jersey. Ibid.  Undoubtedly, a letter merely containing the State Police's interpretation of the New Jersey statutes does not rise to the level of egregious, outrageous, or conscience shocking executive action.   Rather, the letter was a response that the company specifically asked for from the State Police.   Thus, Franklin Armory's due process claims should be dismissed.

## POINT IV

**ANY CLAIMS FOR MONETARY DAMAGES AGAINST THE STATE, ITS AGENCIES, AND ITS EMPLOYEES IN THEIR OFFICIAL CAPACITIES UNDER 42 U.S.C. § 1983 MUST BE DISMISSED BECAUSE THESE CLAIMS ARE BARRED BY THE ELEVENTH AMENDMENT, AND THEY ARE NOT "PERSONS" AMENABLE TO SUIT.**

Any claim for monetary damages in Count VIII under 42 U.S.C. § 1983 must be dismissed because recovery of compensatory and punitive damages against the State, its agencies, or its employees in their official capacity is barred by the Eleventh Amendment and because Defendants are not "persons" amenable to suit for monetary damages under 42 U.S.C. § 1983.

### A. Plaintiff's 42 U.S.C. § 1983 Claim Against Defendants In Their Official Capacities Is Barred By The Eleventh Amendment.

The Eleventh Amendment prohibits naming a state or state agency as a party in federal lawsuits. U.S. Const., Amend. XI; see also Quern v. Jordan, 440 U.S. 332 (1979). The amendment precludes federal jurisdiction over a state absent the state's consent to suit. Pennhurst State School and Hosp. v. Halderman, 465 U.S. 89, 99 (1984). The immunity from suit extends to "agencies or Department[s]" of the state as well, Id. at 101-102, including lawsuits for damages against state officials in their official capacities. Kentucky v. Graham, 473 U.S. 159 (1985); McClary v. O'Hare, 786 F.2d 83 (2d Cir. 1986); Miller v. Rutgers, 619 F. Supp. 1386 (D.N.J. 1985). While prospective injunctive relief may be sought against state officials acting in their

official capacities, a suit for monetary damages is indistinguishable from a suit against the state itself, and is thus prohibited by the Eleventh Amendment.  <u>Miller</u>, 619 F. Supp. at 1392-93.

Here, neither the State nor the named State officials acting in their official capacity have consented to suit.  Thus, the Eleventh Amendment bars the recovery of monetary damages against the State and its officials for alleged constitutional violations.

**B. Defendants Are Not "Persons" Amenable To Suit Under 42 U.S.C. § 1983.**

Additionally, any claims for monetary damages against the State or state officials under 42 U.S.C. § 1983 must be dismissed because Defendants are not "persons" under the statute.  To be liable within the meaning of the statute, a defendant must be a "person." <u>Will v. Michigan Dept. of State Police</u>, 491 U.S. 58 (1989).  A State, or an official of the State while acting in his or her official capacity, is not a "person" within the meaning of § 1983. <u>Ibid.</u>  While § 1983 is a remedy for an official violation of federal rights, it "does not suggest that the State itself was a person that Congress intended to be subject to liability." <u>Id.</u> at 68.

Here, the State is not a "person" under the statute.  The named individual state officials are employed by the State of New Jersey, and are not "persons" under the statute in their official

capacity.  Thus, any claim for monetary damages under § 1983 should be dismissed.

### POINT V

**FRANKLIN ARMORY FAILS TO ESTABLISH THAT ATTORNEY GENERAL GREWAL AND COLONEL PATRICK CALLAHAN HAD PERSONAL INVOLVEMENT IN THE ALLEGED CONSTITUTIONAL VIOLATIONS.**

Any claims against Attorney General Gurbir Grewal and Colonel Patrick Callahan under 42 U.S.C. § 1983 in their individual capacities must be dismissed for lack of personal involvement and/or knowledge.  Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*.  Iqbal, 556 U.S. at 676.  Because vicarious liability is inapplicable to § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, have violated the Constitution.  Ibid.; see also Gittlemacker v. Prasse, 428 F.2d 1, 3 (3d Cir. 1970) (A plaintiff "must portray specific conduct by state officials which violates some constitutional right.").

Here, the Complaint is devoid of any facts alleging that Attorney General Grewal and Colonel Callahan had any personal involvement or knowledge in the State Police responding in the informational letter opining that the Reformation does not fall within New Jersey's definition of a legal shotgun.  Thus, any

17

constitutional claims against Attorney General Grewal or Colonel Callahan in their individual capacities should be dismissed.

<u>**POINT VI**</u>

**COUNTS V AND VI SHOULD BE DISMISSED BECAUSE FRANKLIN ARMORY HAS FAILED TO PLEAD DEFAMATION <u>AND DEFAMATION PER SE.</u>**

Counts V and VI of Franklin Armory's Complaint should be dismissed because the company fails to state a claim for defamation or defamation *per se*. Specifically, the Complaint does not allege the Defendants acted with actual malice, and does not plead a defamatory statement.

Under New Jersey law, a valid claim for defamation requires the plaintiff to establish (1) that the defendant made a defamatory statement of fact; (2) concerning the plaintiff; (3) which was false; (4) which was communicated to persons other than the plaintiff; and (5) fault. <u>E.g.</u>, <u>Paul v. United Parcel Serv.</u>, 2005 WL 3307268, at *2 (D.N.J. Dec. 6, 2005) (quoting <u>Taj Mahal Travel, Inc. v. Delta Airlines Inc.</u>, 164 F.3d 186, 189 (3d Cir. 1998)); <u>see Gray v. Press Commc'ns, LLC</u>, 342 N.J. Super. 1, 10, (N.J. App. Div. 2001). Whether a statement is defamatory depends on "its content, verifiability, and context." <u>Mangan v. Corp. Synergies Grp., Inc.</u>, 834 F. Supp. 2d 199, 204 (D.N.J. 2011) (quoting <u>Lynch v. N.J. Educ. Assoc.</u>, 161 N.J. 152, 167 (1999)). A defamatory statement must be able to be proven true or false – statements of pure opinion do not satisfy this requirement because they only

"reflect a state of mind," and therefore generally "cannot be proved true or false." Ibid. Here, Franklin Armory's allegations do not establish a defamatory comment and thus, its defamation claims fail as a matter of law.

### A.   Plaintiff's defamation claims fail because the State Police's July 17th Letter pertains to a matter of public concern and does not allege actual malice.

When alleged defamatory statements concern a matter of public concern, a plaintiff must plead facts meeting the actual malice standard for liability to attach.   Senna v. Florimont, 196 N.J. 469, 496 (2008).   Actual malice requires a plaintiff establish "that the publisher knew the statement to be false or acted in reckless disregard of its truth or falsity." Durando v. Nutley Sun, 209 N.J. 235, 251 (2012).   Reckless disregard of the truth requires showing that the defendant made the statement with a high degree of awareness of its probable falsity.   Ibid.

To determine whether a statement concerns a matter of public importance, courts consider the content, form, and context of the speech.   Senna, 196 N.J. at 496.   Matters involving highly-regulated industries are more likely to involve a matter of public interest or concern.   See id., 496-97 ("public health and safety, a highly regulated industry ... or a substantial regulatory violation will, by definition, involve a matter of public interest or concern."); Turf Lawnmower Repair, Inc. v. Bergen Record Corp., 139 N.J. 392, 411-12 (1995) (business activities implicating

19

heavily-regulated industries implicate important public interests, unlike sales of lawn mowers, repair of shoes, or cleaning of clothes); see also Dairy Stores, Inc. v. Sentinel Pub. Co., 104 N.J. 125, 141 (1986) (holding sale of bottled drinking water was public concern, reasoning that New Jersey regulated its sale); see also Hohl v. Mettler, 62 N.J. Super. 62, 66 (App. Div. 1960) (applying actual malice standard to criticism of trailer park perceived as threatening drainage, property value, and taxes).

Here, the legality of gun sales in New Jersey is a matter of public concern because the industry is heavily regulated and important to the public. As with the regulation of public health and drinking water in the Senna and Dairy Stores cases, New Jersey is responsible for regulating the possession and sale of firearms. E.g., N.J.S.A. 2C:39-1, et seq.; N.J.S.A. 2C:58-1, et seq.; N.J.A.C § 13:54-1.1, et seq. Indeed, the New Jersey Legislature has declared its "commitment to firearms safety is unrivaled anywhere in the nation." N.J.S.A. 2C:58-2.2. The New Jersey Supreme Court has described the underlying purpose of New Jersey's gun control laws as "prevent[ing] firearms from coming into the hands of persons likely to pose a danger to the public." In re F.M., 225 N.J. 487, 507 (2016) (quoting State v. Cunningham, 186 N.J. Super. 502, 511 (App. Div. 1982)). As in Senna and Dairy Stores, New Jersey's commitment to the regulation of firearms requires

plaintiff to pled facts showing actual malice to state a claim for defamation.

Franklin Armory's Complaint fails to plead actual malice. Franklin Armory does not plead Defendants knowingly made false factual statements about the Reformation. See generally Pl. Compl. Likewise, Franklin Armory does not plead that Defendants recklessly disregarded the legality of the Reformation. To the contrary, the company alleges the Defendants misapplied the law and "acted negligently." See id., ¶ 44-45, 84. The Defendants' alleged acts constituted negligence at most, and thus are insufficient when malice is a necessary element. See also N.E. for J.V. v. State Dep't of Children & Families, Div. of Youth & Family Servs., 449 N.J. Super. 379, 406 (N.J. App. Div. 2017) (discussing negligence and malice). Because Franklin Armory has failed to plead actual malice, the counts for defamation should be dismissed.

## B. Plaintiff's defamation claims fail because they are based on a statement of legal opinion.

Franklin Armory's defamation claims also fail because they are based on a statement of a legal opinion, not a statement of fact. "Statements of opinion, as a matter of constitutional law, enjoy absolute immunity." Dairy Stores, Inc. v. Sentinel Pub. Co., 104 N.J. 125, 147 (N.J. 1986). For a statement to be defamatory, it must be provably true or false and not a statement of opinion.

See Mangan v. Corp. Synergies Grp., Inc., 834 F. Supp. 2d 199, 204 (D.N.J. 2011); Hornberger v. Am. Broad. Companies, Inc., 351 N.J. Super. 577, 601 (N.J. App. Div. 2002).

In Hornberger, police officers sued a television network for defamation when it aired a law professor's statement that they had conducted an illegal search. Id., at 588, 601-02. The television network broadcast a program titled "Driving While Black" wherein young African-American men drove a Mercedes containing concealed cameras and recorded the police performing a traffic stop. Ibid. On the broadcast, the law professor reviewed the recordings and stated the stop was illegal, which prompted plaintiffs' suit for defamation and other claims. Id., at 586. On review, the New Jersey Appellate Division affirmed dismissal of plaintiffs' defamation claim for several reasons including the statements were true and "constituted expressions of legal opinion." Id. at 589-90; see also Read v. Profeta, 397 F. Supp. 3d 597, 653 (D.N.J. 2019) (statement that an idea was "stolen" is "more of a legal conclusion or an opinion-based characterization of the facts, rather than a statement of fact itself that could be verified or disproved); K.L. v. Donio, No. A-5764-14T4, 2017 WL 490558, at *3 (N.J. Super. Ct. App. Div. Feb. 7, 2017) ("a statement construed as either fact or opinion cannot result in liability, because "[a]n interpretation favoring a finding of fact would tend to impose a

chilling effect on speech.") (citing Lynch v. N.J. Educ. Ass'n, 161 N.J. 152, 168 (1999)).

Here, as in Hornberger, Franklin Armory's defamation claims fail because they are based on statements of legal opinion. The New Jersey State Police's opinions on the legality of the Reformation for sale are just that: opinions. Because these statements are legal conclusions and not provable or disprovable facts, Franklin Armory's defamation claim fails as a matter of law and should be dismissed.

### C. Plaintiff's defamation per se claim also fails because it does not allege a statement with clear defamatory meaning.

Franklin Armory's defamation per se fails because Defendants did not make a clearly defamatory statement. Defamation per se applies to statements whose defamatory meaning is so clear on its face that the court is not required to submit the issue to the jury. See, e.g., McLaughlin v. Rosanio, Bailets & Talamo, Inc., 331 N.J. Super. 303, 319 (N.J. App. Div. 2000). Courts have expressed that defamation per se may apply if the fair and natural meaning of a statement falsely attributes criminality to the plaintiff. E.g., Romaine v. Kallinger, 109 N.J. 282, 291 (N.J. 1988). Here, Defendants' statements did not constitute defamation per se because they did not attribute criminality to Franklin Armory. A statement that sales of the Reformation would likely be prohibited in New Jersey does not communicate any statement even

23

implying that Franklin Armory had taken any improper or illegal action. Because Franklin Armory does not allege any statement with clear defamatory meaning, its defamation per se count should be dismissed.

## POINT VII

**COUNTS III AND IV SHOULD BE DISMISSED BECAUSE PLAINTIFF HAS FAILED TO PLEAD INTERFERENCE WITH A CONTRACT/ECONOMIC ADVANTAGE AND THE STATE IS IMMUNE FROM CONSEQUENTIAL OR PUNITIVE DAMAGES IN CONTRACT CLAIMS.**

Counts III and IV of Franklin Armory's Complaint should be dismissed because they contain only conclusory allegations that Defendants acted with malice and the State is immune to consequential and punitive damages in contract actions.

Among other elements, Franklin Armory's interference claims require pleading that the Defendants interfered intentionally and with malice. See Barows v. Chase Manhattan Mortg. Corp., 465 F. Supp. 2d 347, 368 (D.N.J. 2006) (tortious interference with contract); Velop, Inc. v. Kaplan, 301 N.J. Super. 32, 49 (App. Div. 1997) (same); Prima v. Darden Restaurants, Inc., 78 F. Supp. 2d 337, 354 (D.N.J. 2000) (tortious interference with an economic advantage); Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739 (1989) (same). Carelessness or poor decision-making does not constitute actual malice or willful misconduct. See Van Engelen v. O'Leary, 323 N.J.Super. 141 (App. Div. 1999).

Here, Franklin Armory's interference claims fail because they do not contain any more than conclusory allegations that Defendants acted with malice. <u>See</u> Pl. Compl. at ¶ 73. Franklin Armory does not plead that Defendants acted out of ill-will, disseminated false facts about the Reformation, or acted for any personal gain. <u>See generally</u> Pl. Compl. Rather, Franklin Armory merely makes blanket allegations that Defendants intentionally and/or negligently interfered. <u>See id.</u>, ¶¶ 73, 79. Moreover, the State is immune to consequential or punitive damages related to the company's alleged contracts to sell the Reformation to New Jersey firearm dealers. <u>See</u> N.J.S.A. 59:13-3 (a claimant cannot recover consequential or punitive damages from public entities in a contract action); <u>see also</u> <u>Allen v. Fauver</u>, 167 N.J. 69 (2001). Thus, Counts III and IV should be dismissed.

<u>**CONCLUSION**</u>

Based on the above, Defendants' Motion to Dismiss should be granted.

Respectfully submitted,

GURBIR S. GREWAL
ATTORNEY GENERAL OF NEW JERSEY

By:   <u>s/ Michael Vomacka</u>
Michael Vomacka
Deputy Attorney General

By:   <u>s/ Suzanne Davies</u>
Suzanne Davies
Deputy Attorney General

Dated: February 28, 2020