Danny C. Lallis
PISCIOTTI MALSCH
30 Columbia Turnpike, Suite 205
Florham Park, New Jersey 07932
(973) 245-8100
dlallis@pmlegalfirm.com

ATTORNEYS FOR PLAINTIFF
FRANKLIN ARMORY, INC.

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| FRANKLIN ARMORY, INC., | Civ. No. 3:19-cv-19323-FLW-ZNQ |
| Plaintiff, | |
| vs. | Motion Return Date:  April 20, 2020 |
| STATE OF NEW JERSEY; NEW JERSEY STATE POLICE; COL. PATRICK A. CALLAHAN, in his capacity as Superintendent of New Jersey State Police; ATTORNEY GENERAL OF THE STATE OF NEW JERSEY; GURBIR GREWAL, in his official capacity as Attorney General, NEW JERSEY DEPARTMENT OF LAW AND PUBLIC SAFETY, and JOHN DOES 1-10, fictitious parties, | Oral Argument Requested (D.N.J. L. Civ. R. 78.1(b)) |
| Defendants. | |

## PLAINTIFF'S OPPOSITION TO
## DEFENDANTS' MOTION TO DISMISS

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................. iii

PRELIMINARY STATEMENT .............................................................1

FACTUAL ALLEGATIONS ...................................................................2

    I.    FEDERAL AND STATE FIREARM LAWS .............................2

        A.   Federal Firearm Laws ...........................................2

        B.   New Jersey Firearm Laws.......................................4

    II.   THE REFORMATION ..........................................................5

    III.  THE REFORMATION CAN BE LEGALLY SOLD IN NEW JERSEY ........................................................................6

    IV.  PLAINTIFF'S ATTEMPT TO LAWFULLY SELL THE REFORMATION IN NEW JERSEY ....................................7

    V.   PLAINTIFF'S LAWSUIT ...................................................11

STANDARD ...........................................................................................12

ARGUMENT ..........................................................................................13

    I.    PLAINTIFF HAS STATED A CLAIM FOR DECLARATORY RELIEF AND CONSTITUTIONAL VIOLATIONS ..................................................................13

        A.   Plaintiff Challenges Defendants' Interpretation and Application of the Relevant Laws ....................................................13

        B.   Plaintiff Has Stated a Claim Under the Fourteenth Amendment .....................................15

        C.   Since the Reformation Can Legally be Sold in New Jersey, Plaintiff Has Stated a Claim Under the Second Amendment ........................19

    II.   PLAINTIFF HAS ADEQUATELY STATED A CLAIM UNDER 42 U.S.C. § 1983........................................21

    III.  PLAINITFF HAS ADEQUATELY STATED A CLAIM FOR DEFAMATION AND DEFAMATION PER SE ...............22

i

**A.**   **The July 17th Letter Did Not Pertain to a Matter of Public Concern and Even If It Did, Plaintiff Has Plausibly Alleged Actual Malice** ...................................................23

**B.**   **Plaintiff's Defamation Claims are Not Based on "Opinion"** ...................................................24

**C.**   **Plaintiff Has Alleged Statements With a Clear Defamatory Meaning** ...........................27

**IV.**   **PLAINTIFF HAS ADEQUATELY PLEADED CLAIMS FOR TORTIOUS INTERFERENCE WITH A CONTRACT AND TORTIOUS INTERFERENCE WITH A PROSPECTIVE ECONOMIC ADVANTAGE** .................28

**V.**   **TO THE EXTENT ANY CAUSE OF ACTION IS DISMISSED, PLAINTIFF RESPECTFULLY REQUESTS LEAVE TO AMEND** ...........................................30

**CONCLUSION** ...........................................................30

# TABLE OF AUTHORITIES

## CASES

Abbott v. Latshaw,
  164 F.3d 141 (3d Cir. 1998)..................................................................22

Ashcroft v. Iqbal,
  556 U.S. 662 (2009) ...........................................................................12

Ass'n of N.J. Rifle & Pistol Clubs v. Atty. Gen. of N.J.,
  910 F.3d 106 (3d Cir. 2018)..................................................................21

Bell Atl. Corp. v. Twombly,
  550 U.S. 544 (2007) ...........................................................................12

Bethea v. Roizman,
  2012 WL 2500592 (D.N.J. June 27, 2012) ............................................29

Bogosian v. Gulf Oil Corp.,
  561 F.2d 434 (3d Cir. 1977)..................................................................12

Bistrian v. Levi,
  696 F.3d 352 (3d Cir. 2012)..................................................................12

Cafeteria Workers v. McElroy,
  367 U.S. 886 (1961) ...........................................................................15

Chevron, USA, Inc. v. NRDC,
  467 U.S. 837 (1984) ...........................................................................13

Ciemniecki v. Parker McCay, P.A.,
  2010 WL 2326209 (D.N.J. June 7, 2010) ...............................................23

Collins v. Harker Heights,
  503 U.S. 115 (1992) ...........................................................................17

Conn. Nat'l Bank v. Germain,
  503 U.S. 249 (1992) ...........................................................................14

Corley v. United States,
  556 U.S. 303 (2009) ...........................................................................14

Daniel v. Williams,
  474 U.S. 327 (1986) .......................................................................15, 17

DeVries v. McNeil Consumer Prod. Co.,
  593 A.2d 819 (N.J. App. Div. 1991) .......................................................................27

District of Columbia v. Heller,
  554 U.S. 570 (2008) ...............................................................................................20

Durando v. Nutley Sun,
  37 A.3d 449 (N.J. 2012) .........................................................................................24

Harvey v. Plains Twp. Police Dep't,
  635 F.3d 606 (3d Cir. 2011) ...................................................................................21

Hornberger v. Am. Broad. Co., Inc.,
  799 A.2d 566 (N.J. App. Div. 2002) ..................................................................24, 25

Irene v. Michael Whaley Interiors, Inc.,
  2020 WL 759573 (D.N.J. Feb. 13, 2020) ...............................................................30

K.L. v. Donio,
  2017 WL 490558 (N.J. Super. Ct. App. Div. Feb. 7, 2017) ...................................25

Kotlikoff v. The Cmty. News,
  444 A.2d 1086 (N.J. 1982) ..............................................................................26, 27

Mathews v. Eldridge,
  424 U.S. 319 (1976) ...............................................................................................16

Morissey v. Brewer,
  408 U.S. 471 (1972) ...............................................................................................16

Mu Sigma, Inc. v. Affine, Inc.,
  2013 WL 3772724 (D.N.J. July 17, 2013) .............................................................29

Read v. Profeta,
  397 F. Supp. 3d 597 (D.N.J. 2019) .........................................................................25

Romaine v. Kallinger,
  537 A.2d 284 (N.J. 1988) ........................................................................................25

Rosenberg v. XM Ventures,
  274 F.3d 142 (3d Cir. 2001) ...................................................................................14

Senna v. Florimont,
  958 A.2d 427 (N.J. 2008) ........................................................................................24

Shuman ex rel. Shertzer v. Penn. Manor Sch. Dist.,
  422 F.3d 141 (3d Cir. 2005) ...................................................................................19

Teixeira v. County of Alameda,
   873 F.3d 670 (9th Cir. 2017) ...................................................................21

United States v. Marzzarella,
   614 F.3d 85 (3d Cir. 2010) ......................................................................21

United States v. Taylor,
   663 F. Supp. 2d 1170 (D.N.M. 2009) ........................................................5

Ward v. Zelikovsky,
   643 A.2d 972 (N.J. 1994) ..................................................................25, 26

Watson v. Abington Twp.,
   478 F.3d 144 (2007) ................................................................................12

West v. Atkins,
   487 U.S. 42 (1988) ..................................................................................21

## CONSTITUTIONS

U.S. Const. amend. II ......................................................................................20

## STATUTES

18 U.S.C. § 921 ................................................................................................4

26 U.S.C. § 5801 ..............................................................................................2

26 U.S.C. § 5845 ..............................................................................................3

42 U.S.C. § 1983 ................................................................................11, 21, 22

N.J. Stat. Ann. § 2C:39-1 ..........................................................4, 5, 6, 10, 15, 21

N.J. Stat. Ann. § 59:13-3 ...............................................................................29

## RULES

Fed. R. Civ. P. 12 ...........................................................................................12

Fed. R. Civ. P. 15 ...........................................................................................30

Plaintiff Franklin Armory, Inc. ("Plaintiff") submits the following opposition to Defendants' Motion to Dismiss (Dkt. No. 11), and respectfully states as follows:

## PRELIMINARY STATEMENT

In moving to dismiss, Defendants misconstrue the scope and purpose of this pending lawsuit.  Plaintiff, a manufacturer of firearms, is not – as Defendants claim – challenging the State of New Jersey's ability to enact certain firearms laws nor is Plaintiff challenging the constitutionality of any law currently in place.  Rather, as made clear by the Complaint, Plaintiff contends that Defendants (1) arbitrarily and improperly interpreted the law to conclude that one of its products, the Reformation, could not be sold in New Jersey; (2) had no legal basis to restrict sales of the Reformation in New jersey; and (3) had no authority to inform dealers in the State that the Reformation could not legally be sold.  In other words, the basis of this lawsuit is the defendants' arbitrary and capricious conduct in effectively prohibiting Plaintiff from selling a lawful firearm in the State of New Jersey.

As the pleaded facts demonstrate, Defendants instructed Plaintiff not to sell a lawful product in New Jersey and then purposefully misconstrued the applicable statute in an effort to justify their intentional and improper conduct.  Thus, Defendants' conduct violated the Due Process Clause of the Fourteenth Amendment as well as Plaintiff's rights under the Second Amendment.  Additionally, as pleaded, Defendants tortiously interfered with Plaintiff's contracts and prospective business

by, among other things, communicating to federally-licensed dealers in New Jersey that the Reformation was illegal.

In moving to dismiss these claims, Defendants' arguments are based upon a purposefully narrow and incomplete assessment of the facts pleaded.  As will be more fully articulated below, Defendants do not have a legitimate basis to seek dismissal of the Complaint as Plaintiff has plausibly stated facts establishing its entitlement to relief under the asserted causes of action.

## FACTUAL ALLEGATIONS

This lawsuit arises out of the official misconduct, negligence, recklessness, and/or purposefully, intentionally, or callously indifferent conduct of Defendants in connection with Plaintiff's attempt to lawfully sell a firearm in the State of New Jersey.  (Dkt. No. 1., ¶ 1.)

## I.    FEDERAL AND STATE FIREARM LAWS.[1]

### A. Federal Firearm Laws.

In 1934, Congress enacted the National Firearms Act, 26 U.S.C. § 5801, *et seq.* ("NFA"), which restricted and regulated the sale, ownership, use, and transport of short-barreled rifles, short-barreled shotguns, machine guns, silencers, suppressors, and "destructive devices."  Id. § 5801.  In this regard, the NFA levied a

---

[1] Given the nature of this lawsuit, and the allegations in the Complaint, a brief background on the applicable firearms laws is warranted.

federal tax on the manufacture, sale, and transfer of certain classes of firearms.  Ibid.

Additionally, the NFA also requires federal registration of certain firearms identified

in the Act, which include machineguns; rifles and shotguns that have an overall

length under 26 inches; rifles with a barrel under 16 inches; shotguns with a barrel

under 18 inches; and firearm suppressors.  26 U.S.C. § 5845(a).  Under the NFA,

"rifles" and "shotguns" are defined as follows:

> (c)  The term "rifle" means a weapon designed or redesigned, made or
> remade, and intended to be fired from the shoulder and designed or
> redesigned and made or remade to use the energy of the explosive in a
> fixed cartridge to fire only a single projectile through a **rifled bore** for
> each single pull of the trigger, and shall include any such weapon which
> may be readily restored to fire a fixed cartridge.
>
> (d)  The term "shotgun" means a weapon designed or redesigned, made
> or remade, and intended to be fired from the shoulder and designed or
> redesigned and made or remade to use the energy of the explosive in a
> **fixed shotgun shell** to fire through a **smooth bore** either a number of
> projectiles (ball shot) or a single projectile for each pull of the trigger,
> and shall include any such weapon which may be readily restored to
> fire a fixed shotgun shell.

26 U.S.C. § 5845(c)-(d) (emphasis added).

In 1968, Congress enacted the Gun Control Act, 18 U.S.C. §§ 921, *et seq.*

("GCA"), which sought to impose a comprehensive regulatory scheme on the

importation, manufacturing, and sale of firearms.  Id. § 921.  The GCA established

certain requirements for the sale of firearms that came within the purview of the Act.

Ibid.  Under the GCA, "rifles" and "shotguns" are defined as follows:

> The term "rifle" means a weapon designed or redesigned, made or remade, and intended to be fired from the shoulder and designed or redesigned and made or remade to use the energy of an explosive to fire only a single projectile through a **rifled bore** for each single pull of the trigger.
> . . . .
>
> The term "shotgun" means a weapon designed or redesigned, made or remade, and intended to be fired from the shoulder and designed or redesigned and made or remade to use the energy of an explosive to fire through a **smooth bore** either a number of ball shot or a single projectile for each single pull of the trigger.

18 U.S.C. § 921(a)(5), (7) (emphasis added).   Under the GCA, a "short-barreled shotgun" is defined as: "a shotgun having one or more barrels less than eighteen inches in length and any weapon made from a shotgun (whether by alteration, modification, or otherwise) if such a weapon as modified has an overall length of less than twenty-six inches."  178 U.S.C. § 921(a)(6).

## B. <u>New Jersey Firearms Laws.</u>

Under New Jersey law, the terms "rifle" and "shotgun are defined as follows:

> "Rifle" means any firearm designed to be fired from the shoulder and using the energy of the explosive in a **fixed metallic cartridge** to fire a single projectile through a **rifled bore** for each single pull of the trigger.
>
> "Shotgun" means any firearm designed to be fired from the shoulder and using the energy of the explosive in a **fixed shotgun shell** to fire through a **smooth bore** either a number of ball shots or a single projectile for each pull of the trigger, or any firearm designed to be fired from the shoulder, which **does not fire fixed ammunition.**

N.J. Stat. Ann. §§ 2C:39-1.m, -1.n (emphasis added).

4

New Jersey prohibits the sale of "sawed-off-shotguns" and "assault weapons." New Jersey defines a "sawed-off-shotgun" as "any shotgun having a barrel or barrels of less than 18 inches in length measured from the breech to the muzzle, or a rifle having a barrel or barrels of less than 16 inches in length measured from the breech to the muzzle, or any firearm made from a rifle or a shotgun, whether by alteration, or otherwise, if such firearm as modified has an overall length of less than 26 inches." N.J. Stat. Ann. § 2C:39-1.o.   New Jersey defines an "assault weapon" as, among other things, "[a] semi-automatic shotgun with either a magazine capacity exceeding six rounds, a pistol grip, or a folding stock." Id. § 2C:39-1.w.(3).

## II.   THE REFORMATION.

Plaintiff is a manufacturer of firearms and firearm parts. (Dkt. No. 1, Plt. Compl., ¶ 20.)  One of the productions it manufactures is the Reformation. (Ibid.) The Reformation is a unique firearm in that it is designed to expel a single projectile through an unrifled barrel that has straight-cut lands-and-grooves.[2] (Id. ¶ 21-22.) The Reformation is neither designed, nor intended, to fire fixed shotgun shells

---

[2] Inside the barrels of handguns and rifles are spiral impressions called "rifling." The raised portions of the rifling are known as lands and the recessed portions are known as grooves. When such a firearm is fired, these lands and grooves cut into the bullet, putting spin on it as it travels through the barrel. See United States v. Taylor, 663 F. Supp. 2d 1170, 1174 (D.N.M. 2009) ("[G]un manufacturers purposefully cut spiral grooves, called rifling, into the barrel of each gun so that bullets will travel straighter and longer distances once fired. The contact between the bullet and rifling leaves 'lands' and 'grooves' on the bullet. The grooves are the spaces cut out by the rifling, and the lands are the ridges where no material has been cut away.").

through its patented barrel system with straight lands and grooves.  (Id. ¶ 22.) Instead, the Reformation is designed and intended to fire standard cartridge ammunition of the size and caliber for which the barrel is chambered.  (Ibid.)

In 2018, the Reformation was submitted to the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("BATF") to evaluate the firearm design for purposes of classifying the Reformation.  (Id. ¶ 23.)  As a result of the unique features of the Reformation (no rifled bore and no utilization of a fixed shotgun shell), BATF classified it as a firearm regulated by the GCA, but not regulated under the NFA.  Id. ¶ 24.)  Instead, the Reformation met the definition of "shotgun" and a "short-barreled" shotgun under the GCA.  (Id. ¶ 25.)  Thus, the Reformation is subject to the GCA only and can be sold in the general channels of interstate commerce subject to the GCA's requirements and state law.  (Ibid.)

## III.   THE REFORMATION CAN BE LEGALLY SOLD IN NEW JERSEY.

Under New Jersey law, the Reformation is not a rifle because it does not fire a projectile through a "rifled bore" and it is not a shotgun because it does not utilize "fixed shotgun shells" but rather uses "fixed ammunition." N.J. Stat. Ann. §§ 2C:39-1.m, -1n.  Since the Reformation is not a "rifle" or "shotgun" under New Jersey law, it cannot meet the definition of "sawed-off shotgun" or "assault weapon" under New Jersey law.  Id. § 2C:39-1.o (defining "short-barreled-shotgun" to be "any *shotgun* having a barrel or barrels of less than 18 inches in length . . or a *rifle* having a barrel

or barrels of less than 16 inches in length"), -1.w.(3) ("[a] semi-automatic shotgun with either a magazine capacity exceeding six rounds, a pistol grip, or a folding stock").)  Thus, the Reformation can legally be sold through federally-licensed firearms ("FFL") retailers in the State of New Jersey.  (Dkt. No. 1, Plt. Compl., ¶ 26.)

## IV.   PLAINTIFF'S ATTEMPT TO LAWFULLY SELL THE REFORMATION IN NEW JERSEY.

Plaintiff intended to commence sales of the Reformation in New Jersey in April 2019 and began the necessary steps to start transferring the firearms to FFL-holders in the State. (Id. ¶ 27.) Indeed, in addition to oral and written communications with FFL-holders, Plaintiff entered into sales contracts with New Jersey retailers.  (Ibid.)  At that time, at least one New Jersey firearms retailer contacted Defendant New Jersey State Police ("NJSP"), which informed the retailer that the Reformation would be eligible for sale in New Jersey and that the Reformation currently fits within the laws of the state as legal.  (Id. ¶¶ 28-29.) Nonetheless, Def. Hearne from the NJSP contacted Plaintiff to request a formal letter describing the characteristics of the Reformation, a request with which Plaintiff complied.  (Ibid.)  Additionally, Plaintiff explained that it already had sales orders in place and intended to commence distribution to licensed dealers in New Jersey unless Plaintiff was advised of a relevant state statute or regulation that prohibited the sales (and which Plaintiff had overlooked).  (Id. ¶ 31.)

On or about April 3, 2019, in a separate correspondence, Def. Sgt. First Class ("DSFC") Brett Bloom, Assistant Head for the Firearms Investigation Unit of NJSP, confirmed via written correspondence that that the sale of the Reformation was legal under New Jersey law.  (Id. ¶ 32.)  However, DSFC Bloom expressed his concern that law enforcement may mistake the Reformation for an "assault weapon" or a "sawed-off-shotgun" under New Jersey law, which may lead to improper prosecution of individual purchasers.  (Id. ¶ 33.)  Therefore, DSFC Bloom instructed Plaintiff not to sell the Reformation in New jersey until receiving a "legal opinion" from the Office of the Attorney General.  (Ibid.)  The NJSP did not cite any legal authority to support the instruction to halt sales of a legal product and terminate business with licensed New Jersey firearms dealers while awaiting a "legal opinion" from the Attorney General.   (Id. ¶ 34.)  Apparently, the NJSP's sole basis to halt sales was its belief that prosecutors and the courts were not competent to properly enforce and interpret the laws of New Jersey.  (Ibid.) Additionally, the NJSP provided no deadline or even an estimate as to when Plaintiff would be able to reengage in lawful commerce in New Jersey through the sales of the Reformation. (Id. ¶ 35.)

Although (1) the laws in New Jersey permitted sales of the Reformation, (2) the NJSP had confirmed on two prior occasions that the sale of the Reformation in New Jersey was legal, (3) the NJSP cited to no statute demonstrating that the sale of

the Reformation would be prohibited, (4) the NJSP provided no authority for instructing Plaintiff to halt sales in New Jersey, and (5) the NJSP provided no estimate as to when Plaintiff could reengage in lawful commerce in New Jersey, Plaintiff agreed to temporarily delay sales in New Jersey in accordance with DSFC Bloom's instruction. (Id. ¶ 36.) During this time period, on or about April 26, 2019, Plaintiff was advised by at least one licensed firearms dealer in New Jersey with whom it had contracted to sell the Reformation that the NJSP contacted the dealer and, based on that contact, the dealer cancelled its order. (Id. ¶ 37.)

Given the situation, Plaintiff again contacted the NJSP and advised that it would begin selling the Reformation on April 29, 2019. (Id. ¶ 38.) In response, DSFC Bloom expressly prohibited Plaintiff from selling the Reformation: "[T]he sale of the firearms in question **will not occur in the State** until we have heard from our legal counsel. **We will advise all licensed retail firearm dealers in the State to suspend any sales of the product** until the Attorney General's office has made a final determination in the legality of the product." (Id. ¶ 39 (emphasis added).) Again, the NJSP cited to no statute, regulation, or other authority granting or authorizing the NJSP or the Attorney General unilateral discretion to – without due process – halt, block, terminate, or otherwise disrupt the lawful sale of a firearm. (Ibid.)

On July 17, 2019, Lt. Stephen Mazzagatti of the NJSP responded with another letter that contradicted the prior responses and misapplied State law ("July 17th Letter"). (Id. ¶ 42.) Specifically, the NJSP glossed over the actual text of the statute and arbitrarily concluded that the Reformation had *"characteristics"* of shotguns because (1) the barrels were not rifled, (2) the firearms are designed to be fired from the shoulder, and (3) the firearms fire a single projectile for each pull of the trigger. (Ibid. (emphasis added).) This response implicitly confirmed, however, that the Reformation did not meet the definition of a "shotgun" as stated under the law, which is why the actual law was not fully quoted in the July 17th correspondence. (Ibid.)

Section 2C:39-1 defines "shotgun" to be: "[1] any firearm designed to be *fired from the shoulder* and [2] *using the energy of the explosive **in a fixed shotgun shell** [3] to fire through a *smooth bore* [4] either a number of ball shots or *a single projectile for each pull of the trigger . . . .*" (Dkt. No. 1, Plt. Compl. ¶ 43.) The Reformation, however, does not utilize the energy of an explosive in a fixed shotgun shell. (Ibid.) In other words, the Reformation did not meet all four elements needed to be classified as a "shotgun" under New Jersey law. (Ibid.) Therefore, the NJSP incorrectly concluded that the Reformation qualified as a "sawed-off shotgun" or an "assault weapon" under New Jersey law. (Id. ¶¶ 45-46.)

## V.   PLAINTIFF'S LAWSUIT.

Plaintiff attempted to resolve this issue without the need for litigation, but after receiving no response to multiple inquiries (including the required ninety-day notice under New Jersey's Tort Claims Act), this lawsuit was commenced.  (Id. ¶¶ 47-52.)  As the foregoing factual background demonstrates, Defendants utilized the color of their authority to continually, improperly, and unreasonably prohibit firearm retailers within the State of New Jersey from purchasing and selling a lawful product. (Id. ¶ 50.)  In essence, Defendants have perpetually prevented the sale of a legal product in this State without justification, authorization, or a legal basis.  (Id. ¶¶ 50-51.)

Therefore, Plaintiff was left with no recourse but to file this lawsuit, which seeks declaratory relief, including a finding that (1) the Reformation can be legally sold and transferred in the State of New Jersey under current law, (2) the acts and conduct of Defendants in attempting to restrict, prohibit, or prevent the sale of the Reformation were unconstitutional; and (3) the acts and conduct of Defendants violated the Second and Fourteenth Amendment.  (Id. ¶¶ 53-70.)  Additionally, based on the pleaded facts, Plaintiff asserts causes of action for (1) tortious interference with a prospective economic advantage, (2) tortious interference with a contract, (3) defamation, (4) defamation per se, (5) civil conspiracy, and (6) a Section 1983 claim. (Id. ¶¶ 71-96.)

11

## STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a party to move for dismissal of a claim upon a "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A complaint should only be dismissed under Rule 12(b)(6) if the alleged facts, taken as true, fail to state any claim. Ibid. It is not necessary for the plaintiff to plead evidence. Bogosian v. Gulf Oil Corp., 561 F.2d 434, 446 (3d Cir. 1977). Moreover, in reviewing a plaintiff's allegations, the Court "must accept as true all well-pleaded factual allegations as well as all reasonable inferences that can be drawn from them, and construe those allegations in the light most favorable to the plaintiff." Bistrian v. Levi, 696 F.3d 352, 358 n. 1 (3d Cir. 2012).

The question before the Court is not whether the plaintiff will ultimately prevail. Watson v. Abington Twp., 478 F.3d 144, 150 (2007). Rather, the question the Court asks is whether the plaintiff has articulated "enough facts to state a claim that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556).

## ARGUMENT[3]

**I.   PLAINTIFF HAS STATED A CLAIM FOR DECLARATORY RELIEF AND CONSTITUTIONAL VIOLATIONS.**

In moving to dismiss Plaintiff's claims for declaratory relief and claims for constitutional violations (Defendants' Argument Points I and III), Defendants misconstrue the purpose of this lawsuit.   Plaintiff is not challenging the constitutionality of New Jersey's firearms laws; Plaintiff is challenging Defendants' arbitrary and capricious enforcement and application of the laws.  Specifically, based on the express and unambiguous terms of the laws, Defendants had no basis to conclude that the Reformation was illegal to possess or sell  in New Jersey and/or to otherwise prevent its sale within this State.

### A.   **Plaintiff Challenges Defendants' Interpretation and Application of the Relevant Laws.**

In a challenge to a governmental agency's construction of a statute it administers, there is a two-step process.  First, the question is whether the legislature has directly spoken on the question at issue because if the intent is clear, then the unambiguously expressed intent of the statute must be applied.  Chevron, USA, Inc. v. NRDC, 467 U.S. 837, 842-43 (1984).  Second, if the statute is silent or ambiguous

---

[3] Point V of Defendants' Motion to Dismiss argues that all alleged constitutional violations against Attorney General Grewal and Colonel Patrick Callahan in their individual capacities should be dismissed.   However, Plaintiff did not bring constitutional violations against these defendants in their individual capacities, as noted in the caption of this case.  Thus, Argument Point V is moot.

with respect to the specific issue, then the question becomes whether the agency's answer is based on a permissible construction of the statute or if the decision is "arbitrary, capricious, or manifestly contrary to the statute." Id. at 843-44.

To determine whether a statute is unambiguous, "court[s] should always turn first to one cardinal cannon before all others:  We have stated time and time again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there." Conn. Nat'l Bank v. Germain, 503 U.S. 249, 253-54 (1992).  Moreover, "[a] statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void, or insignificant." Corley v. United States, 556 U.S. 303, 314 (2009); see also Rosenberg v. XM Ventures, 274 F.3d 142, 147 (3d Cir. 2001) ("[T]he preferred construction of a statute and its regulations is one that gives meaning to all provisions.").

As noted above, Defendants NJSP and the Attorney General submitted the July 17th Letter to Plaintiff advising that it was illegal to sell the Reformation in the State of New Jersey because the Reformation had "characteristics" of a shotgun and therefore, could be considered a "short barreled shotgun" or an "assault weapon" under New Jersey law.  (Dkt. No. 11-3 at p. 1-2.)  However, the applicable statute was purposefully misapplied, as evidenced by the July 17th Letter, which only cited three of the necessary four elements for a firearm to be considered a shotgun under New Jersey law.

14

It is clear and unambiguous that to meet the definition of a shotgun under New Jersey law, there are four elements, all of which must be met:  (1) designed to be fired from the shoulder, (2) use energy of the explosive in a fixed shotgun shell, (3) fire through a smooth bore, and (4) fire a number of ball shots or a single projectile for each pull of the trigger.  N.J. Stat. Ann. § 2C:39-1.  Here, it is alleged in the Complaint that the Reformation does not utilize "a fixed shotgun shell."  (Dkt. No. 1, Plt. Compl., ¶¶ 21-22.)  If the Reformation does not utilize a fixed shotgun shell then, as a matter of law, it does not meet the definition of a shotgun.  If the Reformation does not meet the definition of a shotgun, it cannot meet the definition of a "sawed-off shotgun" or an "assault weapon" because being a "shotgun" is a prerequisite under both statutes.  See N.J. Stat. Ann. §§ 2C:39-1.o., -1.w.(3).

Therefore, Plaintiff has adequately pleaded that Defendants misapplied and/or arbitrarily or capriciously applied the aforementioned laws in an effort to prevent Plaintiff from selling a lawful firearm within the State of New Jersey.

### B. Plaintiff Has Stated a Claim Under the Fourteenth Amendment.

Protection against governmental arbitrariness is the core of due process. Daniel v. Williams, 474 U.S. 327, 331 (1986).  Due process "is not a technical conception with a fixed content unrelated to time, place, and circumstances." Cafeteria Workers v. McElroy, 367 U.S. 886, 895 (1961).  It is "flexible and calls for such procedural protections as the particular situation demands."  Morissey v.

Brewer, 408 U.S. 471, 481 (1972).  Further, a plaintiff has a right to conduct discovery to determine if the procedures provided by the defendants were constitutionally sufficient.  McElroy, 367 U.S. at 895.  Procedural due process also imposes constraints on governmental decisions which deprive individuals of liberty or property interests within the meaning of the Due Process Clause of the Fourteenth Amendment.  Mathews v. Eldridge, 424 U.S. 319, 332 (1976).

Here, Plaintiff has alleged that Defendants, without a hearing or other procedure, have prevented Plaintiff from lawfully selling its product within the State of New Jersey.  Plaintiff further alleges that Defendants arbitrarily applied the law to prevent the lawful sale of its product in the State of New Jersey.  These claims clearly implicate due process protections under the Fourteenth Amendment.

In fact, Defendants' arguments in opposition also raise the issue of unconstitutional vagueness.  See Mathews, 424 U.S. at 333.  Specifically, attached to their opposition, Defendants provided a copy of the letter by which they advised Plaintiff that the Reformation had "characteristics" of a shotgun and thus, may be considered a prohibited sawed-off shotgun or an assault weapon under New Jersey law.  However, Defendants now describe this as an "informational letter" (Dkt. No. 11-1 at p. 10), which clearly places Plaintiff in a proverbial no-man's land.  If Plaintiff attempts to sell the firearm in New Jersey, will the State contend it violated the law?  Perhaps more pressing, having sent this "informational letter" advising that

the sale would be illegal, what licensed firearms dealer in New Jersey would enter into a contract to sell the firearms and risk their business license?  Finally, would any citizen purchase this firearm and risk prosecution, loss of liberty, and potentially the loss of their Second Amendment right to bear arms, all based on an "informational letter." [4]

The substantive due process guarantee also protects against government power being arbitrarily or oppressively exercised.  Daniel, 474 U.S. at 331.  In other words, there cannot be an exercise of power without any reasonable justification in the service of a legitimate government objective.  Ibid.  The Due Process Clause was intended to prevent government officials form abusing their power or employing it is an instrument of oppression.  Collins v. Harker Heights, 503 U.S. 115, 126 (1992).  Thus, the substantive component of the Due Process Clause is violated by executive

---

[4] Additionally, the current description of the July 17th Letter as "informational" seems to contradict prior statements from the NJSP, as DSFC Bloom expressly prohibited Plaintiff from selling the Reformation until the Attorney General's office made a "final determination" on the legality of the product: "[T]he sale of the firearms in question **will not occur in the State** until we have heard from our legal counsel.  **We will advise all licensed retail firearm dealers in the State to suspend any sales** of the product **until the Attorney General's office has made a final determination on the legality of the product**."  (Dkt. No. 1, Plt. Compl., ¶ 39 (emphasis added).)  Moreover, Defendants' current position (that the July 17th Letter was information and not a final determination) would seem to indicate that DSFC Bloom's instruction to Plaintiff not to sell (and to FFLs to suspend all sales) remains in effect.

action when it can "properly be characterized as arbitrary, or conscience shocking, in a constitutional sense."   Ibid.

In moving to dismiss on this ground, Defendants take a purposefully restrictive view of the law and the guarantees under the Due Process Clause.  Citing cases involving warrantless searches, police battery, and police shootings of unarmed civilians, Defendants argue that the facts in this case cannot rise to the level of "conscience shocking."  (Dkt. No. 11-1 at p. 13-14.)  Based on Defendants' position, anything short of physical harm and murder would not provide a basis for a Due Process violation, which means that a governmental official purposefully misconstruing a statute and improperly preventing lawful commerce would never implicate substantive due process considerations.  For obvious reasons, this is illogical.  Here, it is alleged that Defendants utilized their authority to willfully prevent Plaintiff from lawfully selling a firearm in this State and then when pressed to provide authority for their position, Defendants purposefully misapplied the law in order to justify their arbitrary actions.

Separate and apart from the July 17th Letter, Plaintiff alleges that the prior arbitrary conduct of the NJSP also violated the Fourteenth Amendment. Specifically, the NJSP instructed Plaintiff not to sell the Reformation in New Jersey and advised that it told dealers not to sell the Reformation in New Jersey until the Attorney General offered a "final determination" on the legality of the Reformation.

This instruction was provided despite (1) acknowledging that the Reformation was not prohibited under any law and (2) failing to cite to any authority, statute, or rule permitting the State of New Jersey to prevent lawful commerce in the selling of firearms while awaiting such a determination.[5]   This factual situation clearly implicates considerations under the Fourteenth Amendment, including the Equal Protection Clause.  See Shuman ex rel. Shertzer v. Penn. Manor Sch. Dist., 422 F.3d 141, 151 (3d Cir. 2005) (explaining that the Equal Protection Clause provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws," which "is essentially a direction that all persons similarly situated should be treated alike").

Here, Plaintiff has adequately alleged that Defendants violated the Due Process Clause in numerous ways.  Thus, Defendants' argument is without merit.

## C. <u>Since the Reformation Can Legally be Sold in New Jersey, Plaintiff Has Stated a Claim Under the Second Amendment.</u>

In arguing that Plaintiff has no basis to allege a violation of the Second Amendment, Defendants again incorrectly frame the issue.  Defendants argue that since "the Second Amendment does not create a right for Franklin Armory to manufacture or sell any firearm, the July 17th Letter does not impose a burden on

---

[5] Indeed, this position appears even more problematic as Defendants are now arguing that, in fact, the July 17th Letter should not be considered a definitive determination by the Attorney General.  (Dkt. No. 11-1 at p. 14.)

conduct falling within the scope of the Second Amendment's guarantee." (Dkt. No. 11-1, at p. 9.)  However, Plaintiff is not challenging the letter of the laws at issue nor is Plaintiff challenging the State's ability to have enacted the implicated laws.  As explained above, Plaintiff is challenging Defendants' arbitrary and capricious application of the law.   Here, Plaintiff alleges that, based on its unique characteristics, the Reformation does not meet New Jersey's definition of "shotgun" or "rifle," which means that, as a matter of law, the firearm can be lawfully sold by FFLs in New Jersey and lawfully bought and owned by individuals.  Under this factual scenario, Plaintiff has most assuredly stated a claim for a Second Amendment violation.

The ability to possess a firearm in New Jersey is a Constitutionality guaranteed right.  District of Columbia v. Heller, 554 U.S. 570, 628 (2008); U.S. Const. amend. II.   The Second Amendment expressly protects the right of individuals to possess firearms.  Heller, 554 U.S. at 628-30, 35.  Plaintiff has alleged that the firearm at issue – the Reformation – can be lawfully sold and owned in the State of New Jersey under both federal and state law.  Thus, Defendants' repeated and continued efforts to prevent the interstate sales of a legal firearm to New Jersey-licensed firearms dealers and/or stop the sales from the dealers to New Jersey residents violate the Second Amendment.

Defendants' citation to the two-step analysis under <u>United States v.</u> <u>Marzzarella</u>, 614 F.3d 85 (3d Cir. 2010), and the holding in <u>Teixeira v. County of</u> <u>Alameda</u>, 873 F.3d 670 (9th Cir. 2017), misses the mark because – as noted – Plaintiff is not challenging the constitutionality of the New Jersey Statutes at issue (N.J. Stat. Ann. §§ 2C:39-1.o., sawed-off shotgun, or 2C:39-1.w(3), assault weapon). Rather, Plaintiff has alleged that the Reformation does not meet the definition of a "shotgun" under the law (N.J. Stat. Ann. § 2C:39-1.n.), which means that it cannot be found to be a sawed-off shotgun or an assault weapon under New Jersey law. If the short-barreled shotgun and assault weapon statutes are inapplicable, then the Reformation can lawfully be sold and owned in New Jersey and any attempt to prohibit or stop the sales violates the Second Amendment.[6] Accordingly, Defendant has plausibly alleged a violation of the Second Amendment.

## II.   PLAINTIFF HAS ADEQUATELY STATED A CLAIM UNDER 42 U.S.C. § 1983.

To adequately state a claim under 42 U.S.C. § 1983, a plaintiff must allege, first, that it was deprived of a constitutional right and, second, that the alleged deprivation was committed by a person acting under color of state law. <u>West v.</u>

---

[6] Moreover, it is worth noting that the Reformation is a semi-automatic firearm, which is a type of firearm that the Third Circuit has found to be typically possessed by law-abiding citizens for hunting, pest-control, and occasionally self-defense. <u>Ass'n of N.J. Rifle & Pistol Clubs v. Atty. Gen. of N.J.</u>, 910 F.3d 106, 116 (3d Cir. 2018). Such firearms are typically possessed by law-abiding citizens for lawful purposes and, therefore, are entitled to Second Amendment protection. <u>Ibid.</u>

21

Atkins, 487 U.S. 42, 48 (1988); Harvey v. Plains Twp. Police Dep't, 635 F.3d 606, 609 (3d Cir. 2011).   "Action under color of state law" requires that a person "exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law."   Abbott v. Latshaw, 164 F.3d 141, 146 (3d Cir. 1998).

Here, the Complaint contains sufficient well-pleaded facts to plausibly satisfy these elements.   As already addressed (Argument Section I, *supra*), there are extensive allegations pertaining to violations of Constitutional rights.   Further, Plaintiff has specifically pleaded that Defendants, on multiple occasions, wrongly prohibited Plaintiff from lawfully selling its products within the State of New Jersey. Thus, Defendants exercised power possessed by virtue of state law and made possible because they were clothed with the authority of the state.   Abbott, 164 F.3d at 146.   Therefore, Plaintiff has sufficiently alleged facts to support this cause of action, and Plaintiff's claims under 42 U.S.C. § 1983 should not be dismissed.

**III.   PLAINTIFF HAS ADEQUATELY STATED A CLAIM FOR DEFAMATION AND DEFAMATION PER SE.**

In moving to dismiss Plaintiff's defamation causes of action (Counts V and VI), Defendants argue that dismissal is warranted because (1) the July 17th Letter pertains to a matter of public concern and Plaintiff does not allege actual malice, (2) the claims are based on legal opinion, and (3) there is no statement with clear defamatory meaning.   Briefly, none of these arguments have merit and, especially at

the pleadings stage, there are sufficient facts alleged to state plausible causes of action.

**A. The July 17th Letter Did Not Pertain to a Matter of Public Concern and Even If It Did, Plaintiff Has Plausibly Alleged Actual Malice.**

Defendants argue that the defamatory statements at issue "concern a matter of public concern," which means that a plaintiff must plead facts meeting the actual malice standard. (Dkt. No. 11-1 at p. 19.) First, when the alleged defamation is an isolated event (like in this case), a court should not decide whether it is a matter of public concern at the motion to dismiss phase. Ciemniecki v. Parker McCay, P.A., 2010 WL 2326209, at *13 (D.N.J. June 7, 2010). Thus, Plaintiff respectfully contends that Defendants' arguments in this regard are premature at this stage.

Second, the allegations of defamation in this matter do not relate to the promotion of self-government or advancement of public interest. Instead, they relate to defamatory statements made to improperly prevent the sale of the Reformation firearm: "Upon information and belief, Defendants communicated with third-parties (New Jersey licensed retailers) and advised them that (1) the Reformation was prohibited and/or illegal; (2) the sales of the Reformation should be suspended; and/or (3) approval from the Attorney General was required prior to Plaintiff being allowed to sell the Reformation in New Jersey." (Dkt. No. 1, Plt. Compl. ¶ 83.) In this way, the allegations of defamation do not relate to promotion of self-government or advancement of public interest. Instead, they relate to defamatory statements

23

made to prevent the sales of a legal product.  See Senna v. Florimont, 958 A.2d 427, 434-37 (N.J. 2008).  The alleged defamatory act here is more akin to a business preventing sales by a competitor and not a situation involving a newspaper article from an investigative journalist.  Therefore, the heightened "public concern" standard should not apply.  Ibid.

Third, even if this matter is to be considered one of public concern, adequate facts supporting a claim of actual malice have been pleaded.  Plaintiff alleges that Defendants knew the Reformation was not prohibited by state law, yet falsely informed dealers that it was prohibited.  (See, e.g., Dkt. No. 1, Plt. Compl., ¶¶ 29, 32, 37.)  Similarly, Plaintiff alleges that Defendants knew there was no legal basis to suspend or prevent sales of the Reformation until the Attorney General approved the selling of the Reformation, but Defendants falsely informed dealers that these were prerequisites to the sale.  (Id. ¶ 83; see also id. ¶ 1 (alleging reckless, intentional, and callously indifferent conduct).)  Such pleadings sufficiently state an allegation of actual malice for purposes of meeting the pleading standards.  See Durando v. Nutley Sun, 37 A.3d 449, 452-53 (N.J. 2012).  Therefore, Defendants' motion to dismiss this Count should be denied.

### B. **Plaintiff's Defamation Claims are Not Based on "Opinion."**

Relying primarily on Hornberger v. American Broadcasting Companies, Inc., 799 A.2d 566 (N.J. App. Div. 2002), Defendants argue that the alleged statements

upon which Plaintiff based its defamation claims are non-actionable opinions. (Dkt. No. 11-1 at p. 21-22.)  Preliminarily, the Hornberger case (as well as the other two cases Plaintiff primarily rely on)[7] was not decided on a motion to dismiss but, rather, on a motion for summary judgment, after the parties had sufficient time to investigate and develop facts.  Indeed, discovery, including depositions, is typically required because "the publication as a whole [must be examined]" as well as "the context in which the statement appears." Romaine v. Kallinger, 537 A.2d 284, 295-96 (N.J. 1988); see also Ward v. Zelikovsky, 643 A.2d 972, 980-81 (N.J. 1994). Thus, the cases upon which Defendants rely demonstrate that their argument is premature.[8]

More pertinently, the Hornberger case is readily distinguishable from the facts at hand.  In that case, as part of a television news segment, a law professor listened to recordings of a police-performed traffic stop and offered his opinion that the stop had been illegal.  799 A.2d at 572-73.  The lawsuit against the professor was dismissed on summary judgment because the law professor's statements

---

[7] Read v. Profeta, 397 F. Supp. 3d 597 (D.N.J. 2019) (decided on summary judgment); K.L. v. Donio, 2017 WL 490558, at *3 (N.J. Super. Ct. App. Div. Feb. 7, 2017) (decided on summary judgment).

[8] In this case, the complete facts pertaining to the defamatory statements will be possessed by Defendants and the non-party retailers.  Thus, this issue should not be decided on a motion to dismiss without Plaintiff having the benefit of conducting discovery.

"constituted expressions of legal opinion."  Id. at 573-74.  Here, the alleged

defamatory statements are not based on statements of an "opinion" but rather were

statements of fact.  Plaintiff alleges that Defendants knew the reformation was legal

to sell, but falsely told dealers it was illegal.  (Dkt. No. 1, Plt. Compl., ¶¶ 29, 32, 37,

82-89.)  A statement from the NJSP or the Attorney General's Office that the

Reformation has been found to be legally prohibited (as alleged), is a statement of

fact, not an opinion, as it can be proven true or false.  Ward, 643 A.2d at 980

(explaining that "actionable defamatory statements" are capable of being verified

whereas "statements that are in the form of opinion . . . cannot reasonably be

understood to be meant literally and seriously").  Therefore, Plaintiff's allegations

are well-pleaded and specific.

Moreover, even if the alleged statements could, in some manner, be

considered an "opinion," the statements remain actionable as a "mixed" opinion

based on undisclosed defamatory facts (i.e., the legality of the Reformation under

New Jersey law).  See Kotlikoff v. The Cmty. News, 444 A.2d 1086, 1089 (N.J.

1982) ("A defamatory communication may consist of a statement in form of an

opinion . . . if it implies the allegation of undisclosed defamatory facts as the basis

of the opinion.").  Here, to the extent the statements by Defendants to dealers were

opinions, they were based on the undisclosed facts concerning a purported finding

by the Office of the Attorney General.  (See Dkt. No. 1, Plt. Compl., ¶ 33.)  As such,

Plaintiff has adequately alleged a defamatory statement based on the undisclosed defamatory fact that the Attorney General determined the Reformation was illegal when, in fact, it was not. Kotlikoff, 89 N.J. at 69. For all of the foregoing reasons, Defendants' motion to dismiss the defamation counts is not well-taken and should be denied accordingly.[9]

### C. **Plaintiff Has Alleged Statements With a Clear Defamatory Meaning.**

Defendants argue that Plaintiff's defamation per se claim should be dismissed because the alleged statements did not attribute criminality to Plaintiff. (Dkt. No. 11-1 at p. 23.) This argument ignores the content of the Complaint where Plaintiff alleges that Defendants did attribute criminality in stating that Plaintiff was attempting to knowingly sell illegal firearms. (Dkt. No. 1, Plt. Compl., ¶ 87.) Falsely attributing such criminal behavior is precisely what is encompassed by defamation per se. See DeVries v. McNeil Consumer Prod. Co., 593 A.2d 819, 823-24 (N.J. App. Div. 1991) ("[S]tatements alleging that the subject committed a crime are defamatory *per se*."). Based on the four corners of the Complaint, Plaintiff respectfully submits that it has plausibly stated a claim for defamation per se. As such, Plaintiff's request to dismiss this cause of action should be denied.

_____

[9] Furthermore, it is worth noting that, unlike an opinion from a law professor who is reviewing police conduct third-hand, any statement regarding the legality of selling the Reformation in New Jersey from the Attorney General's Office or the NJSP – which are the governmental entities tasked with making such determinations – would be construed by the listener to be a matter of fact.

**IV.**  **PLAINTIFF HAS ADEQUATELY PLEADED CLAIMS FOR TORTIOUS INTERFERENCE WITH A CONTRACT AND TORTIOUS INTERFERENCE WITH A PROSPECTIVE ECONOMIC ADVANTAGE.**

Defendants argue that the causes of action for tortious interference with a contract and with a prospective economic advantage (Counts III and IV) should be dismissed because (1) the Complaint contains only conclusory allegations in this regard and (2) Defendants are immune from consequential damages in a contract action.  Both arguments are unsupportable.

First, in opposition, Defendants implicitly concede that Plaintiff has pleaded all elements of these two causes of action but argue that Plaintiff's Complaint contained only "conclusory allegations" pertaining to the element requiring Defendants to have "acted with malice."  (Dkt. No. 11-1 at p. 25.)  To make this argument, Defendants again take a purposefully narrow view of the Complaint.  (Ibid. (citing paragraphs 73 and 79 of Complaint).)  Contrary to Defendants' argument, the Complaint specifically alleges that Defendants "disseminated false facts about the Reformation."  (Ibid.)  Moreover, Plaintiff specifically, and repeatedly, alleged in the Complaint that Defendants' conduct was purposeful and intentional.  (Dkt. No. 1, Plt. Compl., ¶¶ 1, 73, 79.)  Plaintiff also described the acts performed by Defendants that were performed intentionally (improperly restricting Plaintiff from lawfully selling the Reformation, advising retailers not to sell the product, instructing retailers that the product was illegal, etc.).  (Ibid.)  It is well-

settled that at the pleading stage, a plaintiff must only allege facts supporting a plausible inference of actual malice.  See, e.g., Mu Sigma, Inc. v. Affine, Inc., 2013 WL 3772724, at *4 (D.N.J. July 17, 2013).   Plaintiff submits that the facts pleaded in the Complaint are sufficient to meet this standard.

Second, Plaintiff's reliance on New Jersey Statutes section 59:13-3 is misplaced.  This statute states:

> The State of New Jersey hereby waives its sovereign immunity from liability arising out of an express contract or a contract implied in fact and consents to have the same determined in accordance with the rules of law applicable to individuals and corporations; provided, however, that there shall be no recovery against the State for punitive or consequential damages **arising out of contract** nor shall there be any recovery against the State for claims based upon **implied warranties or upon contracts implied in law**.

N.J. Stat. Ann. § 59:13-3 (emphasis added).  On its face, this statute does not apply to Plaintiff's causes of action for tortious interference with a contract or with a prospective economic advantage as those are not contract claims.  See Bethea v. Roizman, 2012 WL 2500592, at *15 (D.N.J. June 27, 2012) (analyzing tortious interference with a contract under Tort Claims Act and not under section 59:13-3).  Plaintiff's claims do not arise from an implied warranty or an implied contract; they arise from Defendants' tortious conduct.  Accordingly, Defendants' arguments in support of dismissing these counts are not well taken, and Defendants' motion should be denied.

## V.   TO THE EXTENT ANY CAUSE OF ACTION IS DISMISSED, PLAINTIFF RESPECTFULLY REQUESTS LEAVE TO AMEND.

While Plaintiff contends that Defendants' motion should be entirely denied, to the extent the Court were inclined to grant any aspect of the motion to dismiss, Plaintiff respectfully requests leave to amend the complaint.  See Fed. R. Civ. P. 15(a)(2); Irene v. Michael Whaley Interiors, Inc., 2020 WL 759573, at *6 (D.N.J. Feb. 13, 2020) (explaining that the Court should freely give leave to amend and although dismissing certain causes of action, granted the plaintiffs leave to file a second amended complaint).  In this instance, there is no prejudice to Plaintiff as the case is still in its infancy and there would not otherwise be a justifiable reason to deny such relief.[10]

## CONCLUSION

Based on the foregoing arguments and authorities, Plaintiff respectfully requests that Defendants' motion to dismiss be, in all things, denied.

Dated:  April 6, 2020

[SIGNATURE ON SUBSEQUENT PAGE]

---

[10] Indeed, it is worth noting that Defendants obtained multiple extensions of time to respond to the Complaint.  (See Dkt. No. 7, 9.)  Thus, it would be inequitable for Defendants to claim there would be any prejudice as a result of a delay caused by the filing of an amended complaint.

Respectfully submitted,

**PISCIOTTI MALSCH**

By:   s/ Danny C. Lallis
       Danny C. Lallis
       30 Columbia Turnpike, Suite 205
       Florham Park, New Jersey 07932
       Telephone:   (973) 245-8100
       Facsimile:    (973) 245-8101
       dlallis@pmlegalfirm.com

       **Attorneys for Plaintiff**
       **Franklin Armory, Inc.**

## CERTIFICATE OF SERVICE

I, Danny C. Lallis, attorney for the plaintiff in the above-captioned matter, hereby certify that on the 6th day of April 2020, a true copy of the foregoing was electronically filed and is available for viewing and downloading from the Court's Electronic Filing System ("ECF"), which caused the following parties who are listed as ECF Filing Users to be served by electronic means:

Suzanne Davies, Esq.
Michael Vomacka, Esq.
DEPUTY ATTORNEY GENERAL
R.J. Hughes Justice Complex
P.O. Box 112
25 Market Street
Trenton, New Jersey 08625-0112
suzanne.davies@law.njoag.gov
michael.vomacka@law.njoag.gov

Dated:  April 6, 2020

By:   s/ Danny C. Lallis
　　　Danny C. Lallis
　　　PISCIOTTI MALSCH
　　　30 Columbia Turnpike, Suite 205
　　　Florham Park, New Jersey 07932
　　　Telephone:   (973) 245-8100
　　　Facsimile:    (973) 245-8101
　　　dlallis@pmlegalfirm.com

　　　**Attorneys for Plaintiff**
　　　**Franklin Armory, Inc.**