

Philip D. Murphy
*Governor*

Sheila Y. Oliver
*Lt. Governor*

# State of New Jersey
Office of the Attorney General
Department of Law and Public Safety
Division of Law
25 Market Street
PO Box 112
Trenton, NJ 08625-0112

Gurbir S. Grewal
*Attorney General*

Michelle L. Miller
*Director*

October 16, 2020

**VIA ECF FILING**
Honorable Freda L. Wolfson, U.S.D.J.
United States District Court
District of New Jersey
Clarkson S. Fisher Federal Building
& U.S. Courthouse
402 East State Street
Trenton, New Jersey 08608

   Re: Franklin Armory v. State of New Jersey
      Civil Action No.: 19-19323 (FLW)

Dear Chief Judge Wolfson:

Please accept this letter in lieu of a formal brief in response to your Honor's September 28, 2020 Order directing Defendants to address (1) whether Plaintiff has received a final determination pertaining to its ability to sell the Reformation in the State of New Jersey; and (2) whether there is any official administrative procedure pursuant to which a firearm manufacturer may seek a binding opinion regarding the legality of a particular firearm, and any applicable appeal procedures. The answer to both questions is in the negative. First, Plaintiff has not received a final determination on its ability to sell the Reformation in



New Jersey.  Next, there is no official administrative procedure by which the New Jersey State Police can render a binding decision on the legality of a particular firearm; and, that being the case, there is no process to appeal.

Nevertheless, the Court should still dismiss Plaintiff's Complaint because its pleadings do not give rise to a claim.  As discussed in Defendants' Motion to Dismiss Plaintiff's Complaint, Plaintiff's claims each fail in several respects.  Plaintiff's Second Amendment claims fail because the Amendment does not create an independent right to manufacture or sell firearms.  *See* Defendants' Motion, ECF No. 11, at 8-11.  Plaintiff's Fifth Amendment claims fail because that Amendment's Due Process clause does not apply to State government actors.  *See id.*, at 11-12.  Similarly, Plaintiff's claims under the Fourteenth Amendment do not give rise to a due process violation because the allegations do not "shock the conscience."  *See id.*, at 12-14.  Its defamation, tortious interference with contract, and contract claims fail to satisfy the requisite elements of malice and/or a defamatory statement. *See id.*, at 18-25.  Further, Plaintiff's claims against Defendants New Jersey Attorney General and Callahan fail for failure to plead personal involvement.  *See id.*, at 17-18.  Plaintiff's § 1983 claims for damages fail as the defendants are not amenable to suit.  *See id.*, at 15-17.  Thus, the Court should

dismiss Plaintiff's Complaint for the reasons set forth in Defendants' motion. Alternatively, this Court can avoid resolving these federal and state claims by dismissing the Complaint on the basis of *Pullman* abstention.

Although the New Jersey State Police do not issue official decisions on the legality of Plaintiff's firearm, Plaintiff may seek a declaratory judgment from New Jersey courts.  Plaintiff's claims hinge on the application of New Jersey law to its firearm. As such, Plaintiff should instead seek a declaratory judgment from a New Jersey state court.  While this Court can still dismiss Plaintiff's complaint for the reasons set forth in Defendants' Motion to Dismiss, alternatively, it can abstain under *Pullman* so that the applicable state law may be addressed in state court.

### POINT I

**PLAINTIFF MAY SEEK A DECLARATORY JUDGMENT IN NEW JERSEY STATE COURT ON THE LEGALITY OF ITS FIREARM, AND UNTIL PLAINTIFF DOES, THIS COURT SHOULD ABSTAIN FROM DETERMINING THIS MATTER.**

Although Plaintiff cannot obtain a binding opinion from the New Jersey State Police, it may seek a declaratory judgment on the legality of the Reformation in New Jersey State Court.  Thus, even though Plaintiff's claims are ripe, this is one of the exceptional cases in which *Pullman* abstention is warranted.  Abstention under

*Pullman* will provide New Jersey courts an opportunity to assess whether the Reformation complies with New Jersey criminal law.

*Pullman* abstention may be employed "when a federal court is presented with both a federal constitutional issue and an unsettled issue of state law whose resolution might narrow or eliminate the federal constitutional question, … [thus] avoid[ing] 'needless friction with state policies.'" *Presbytery of New Jersey of the Orthodox Presbyterian Church v. Whitman*, 99 F.3d 101, 106 (3d Cir. 1996)(quoting *Chez Sez III Corp. v. Township of Union*, 945 F.2d 628, 631 (3d Cir. 1991)(quoting *Railroad Comm'n v. Pullman*, 312 U.S. 496, 500 (1941)). Abstention is "appropriate where an unconstrued state statute is susceptible of construction by the state judiciary which might avoid in whole or in part the necessity for federal constitutional adjudication, or at least materially change the nature of the problem." *Planned Parenthood of Cent. N.J. v. Farmer*, 220 F.3d 127, 149 (3d Cir. 2000). Before a federal court may abstain under the *Pullman* doctrine, three "exceptional circumstances" must be present. *Id.*, 149-150. First, there must be "uncertain issues of state law underlying the federal constitutional claims." *Id.* Second, the state law issues must be amenable to a state court interpretation which could "obviate the need to adjudicate or substantially narrow the scope of the federal constitutional claim." *Id.* Finally, it must be the case that "an

erroneous construction of state law by the federal court would disrupt important state policies." *Id.* Where, as is the case here, these circumstances are present, the Court considers equitable factors: "the availability of an adequate state remedy, the length of time the litigation has been pending, and the impact of delay on the litigants." *Planned Parenthood of Cent. N.J. v. Farmer*, 220 F.3d 127, 149 (3d Cir. 2000) (quoting *Artway v. Attorney Gen. of State of N.J.*, 81 F.3d 1235, 1270 (3d Cir. 1996)).

Here, Franklin Armory's federal claims hinge on whether the Reformation complies with New Jersey criminal law. More specifically, whether the Reformation is a shotgun as defined by New Jersey criminal law. Indeed, Counts I and II are premised upon an alleged "misapplication of the law." *See* Pl. Comp., ECF No. 1, at ¶¶ 55, 57, 64 and 66. Moreover, the state law issues are uncertain as the statutes at issue have not ever been applied to the Reformation. It stands to reason, then, that neither the Court nor the parties "know how the courts of New Jersey would interpret" state law as applied to the Reformation and, thus, the first factor for *Pullman* abstention is present. *Presbytery*, 99 F.3d at 107.

The second factor for *Pullman* abstention is also present. Plaintiff has explained it is not challenging New Jersey's firearms statutes, but rather the State's enforcement and application of those laws. *See* Plaintiff's Opposition to Motion to Dismiss, ECF

No. 13, at 13. That is, Plaintiff contends that the State Police merely reached the wrong conclusion. A state court determination, regardless of the outcome, eliminates any Procedural Due Process claim included in Counts I and II as Plaintiff would be afforded such process. Moreover, a determination that the Reformation is not a "shotgun" under New Jersey criminal law obviates the need for the declaratory judgment sought in Counts I and II. Likewise, a determination that the Reformation is illegal under New Jersey law would substantially narrow, if not eliminate, Plaintiff's claims as such a conclusion undercuts Plaintiff's allegation that the State Police "misapplied" "State law" and "the definition of 'shotgun.'" Pl. Compl., ECF No. 1, at ¶¶ 42, 44, 45, 57 and 66. Thus, whether the Reformation is a "shotgun" as defined by New Jersey criminal law is an issue "amenable to a state court interpretation which could 'obviate the need to adjudicate or substantially narrow the scope of the federal constitutional claim.'" *Planned Parenthood*, 220 F.3d at 149-50.

Finally, an erroneous construction of state criminal law by the federal courts would not only disrupt important state policies but also disrupt "the sensitive relation between federal and state criminal jurisdiction." *United States v. Bond,* 572 U.S. 844, 858-59 (2014)(quoting *United States v. Bass*, 404 U.S. 336, 349 (1971)). "[C]riminal law enforcement" is an area in which "States

historically have been sovereign." *United States v. Lopez*, 514 U.S. 549, 564 (1995). See *United States v. Bond,* 572 U.S. 844, 848 (2014)(the "constitutional structure leaves local criminal activity primarily to the States"); *id.* at 858 (*citing United States v. Morrison*, 529 U.S. 598 (2000)("Perhaps the clearest example of traditional state authority is the punishment of local criminal activity."). Federal courts are loathe to "'dramatically intrude[] upon traditional state criminal jurisdiction'" *Id.* at 857 (quoting *Bass*, 404 U.S. at 350). In addition to intruding upon a traditional area of state sovereignty, an erroneous construction of state criminal law would undermine New Jersey's gun control laws which are aimed at "prevent[ing] firearms from coming into the hands of persons likely to pose a danger to the public." *In re F.M.*, 139 A.3d 67, 79 (2016) (quoting *State v. Cunningham*, 453 A.2d 239, 243 (App. Div. 1982)). New Jersey has declared its "commitment to firearms safety is unrivaled anywhere in the nation." N.J. Stat. Ann. § 2C:58-2.2.

Not only are all of exceptional circumstances satisfied but the equitable factors also support *Pullman* abstention. First, as mentioned above, an adequate state remedy is available. *See e.g. Presbytery*, 99 F.3d at 107. A person interested in a contract whose status or legal relations are affected by a statute may have questions of construction or validity determined and obtain a

declaration of rights, status, or other legal relations. N.J. Stat. Ann. § 2A:16-53. New Jersey courts liberally construe and administer the Declaratory Judgment Act to afford relief from uncertainty with respect to a party's rights. *E.g., ML Plainsboro Ltd. P'ship v. Twp. of Plainsboro*, 719 A.2d 1285, 1287 (App. Div. 1998). Here, Plaintiff alleges it entered at least one sales contract with a New Jersey firearms retailer, *see* Pl. Compl., ECF No. 1, at ¶¶ 27, and thus, can seek a judicial declaration on its rights to sell the Reformation under New Jersey law. In *Presbytery*, the Third Circuit relied on the availability of declaratory relief under New Jersey in concluding that an adequate state remedy was available. 99 F.3d at 107.

As to the age of this case, the litigation has only been pending one year, and Plaintiff's April 2020 filing indicated it would not be prejudiced by amending its complaint. *See* Plaintiff's Opposition to Motion to Dismiss, ECF No. 13, at 30. Furthermore, Plaintiff cannot identify any significant delay that it will suffer as a result of pursuing a declaratory judgment in state court. Indeed, "any delay is at least partly of [Plaintiff's] own making, as [it] plainly possessed the right to seek a declaratory judgment in state court from the outset of this litigation and should have realized that federal court abstention was at least a possibility." *Presbytery*, 99 F.3d at 107. As any delay would not cause harm to

the parties, the Court should abstain under *Pullman* and dismiss Plaintiff's Complaint.

As set forth above, although Plaintiff cannot seek a binding opinion from the State Police on the legality of the Reformation, it can seek a declaratory judgment. As such, the Court should exercise *Pullman* abstention and permit New Jersey courts to rule on the interpretation of New Jersey firearms law.

## CONCLUSION

For the above stated reasons, this court should dismiss Franklin Armory's Complaint.

Respectfully submitted,
GURBIR S. GREWAL
ATTORNEY GENERAL OF NEW JERSEY

By: /s/ Michael Vomacka
    Michael Vomacka
    Deputy Attorney General
    Michael.vomacka@law.njoag.gov