Danny C. Lallis
PISCIOTTI MALSCH
30 Columbia Turnpike, Suite 205
Florham Park, New Jersey 07932
(973) 245-8100
dlallis@pmlegalfirm.com

ATTORNEYS FOR PLAINTIFF
FRANKLIN ARMORY, INC.

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| FRANKLIN ARMORY, INC.,<br><br>     Plaintiff,<br><br>vs.<br><br>STATE OF NEW JERSEY; NEW JERSEY STATE POLICE; COL. PATRICK A. CALLAHAN, in his capacity as Superintendent of New Jersey State Police; ATTORNEY GENERAL OF THE STATE OF NEW JERSEY; GURBIR GREWAL, in his official capacity as Attorney General, NEW JERSEY DEPARTMENT OF LAW AND PUBLIC SAFETY, and JOHN DOES 1-10, fictitious parties,<br><br>     Defendants. | Civ. No. 3:19-cv-19323<br><br>**PLAINTIFF'S RESPONSE TO DFEENDANTS' SUPPLEMENTAL LETTER BRIEF PURSUANT TO COURT ORDER DATED SEPTEMBER 28, 2020** |

     In accordance with the Court's Order dated September 28, 2020 (Dkt. No. 17), Plaintiff Franklin Armory, Inc. ("Plaintiff" or "Franklin Armory") respectfully submits this response to Defendants' supplemental letter brief dated October 16, 2020 (Dkt. No. 18), and states as follows:

**PRELIMINARY STATEMENT**

     On September 28, 2020, the Court issued an Order requesting supplemental briefing on the very narrow issue of ripeness. Specifically, the Court ordered Defendants to submit a supplemental brief addressing two issues: "1) whether Plaintiff has received a final determination

1

pertaining to Plaintiff's ability to sell the Reformation in the State of New Jersey and 2) detailing the official administrative procedure, if any, pursuant to which a firearm manufacturer may seek a binding opinion regarding the legality of a particular firearm and any applicable appeal procedures." (Dkt. No. 17, Order at p. 6.)

In response, Defendants submitted a nine-page letter which conceded that the matters at hand are ripe for adjudication and answered the Court's questions in two sentences:

> The answer to both questions is in the negative. First, Plaintiff has not received a final determination on its ability to sell the Reformation in New Jersey. Next, there is no official administrative procedure by which the New Jersey State Police can render a binding decision on the legality of a particular firearm; and, that being the case, there is no process to appeal.

(Dkt. No. 18, Defs. Ltr. at p. 1-2.) Defendants then contend that it was Plaintiff's obligation to "seek a declaratory judgment" from the courts as to legality of the Reformation. (Id. at p. 3.) Tellingly, rather than confining their submission to the questions raised by the Court, Defendants spend the remaining pages of their submission reiterating the identical arguments previously raised in their Motion to Dismiss (pages 2-3) before arguing in favor of Pullman preemption, which is an issue that had not previously been raised (pages 3-9). The reason for glossing over the actual issues raised by the Court is because Defendants' current position contradicts their prior statements to Plaintiff and confirms that Defendants inappropriately utilized the color of their authority to prevent the lawful sale of Plaintiff's products in the State of New Jersey.

As will be briefly discussed below, and as conceded by Defendants in their submission, the matters presented in this lawsuit are ripe for adjudication and Defendants' request for the Court to abstain is not well-founded.

2

**ARGUMENT**

I. **DEFENDANTS' CURRENT POSITION CONTRADICTS THEIR PRIOR POSITIONS AND DEMONSTRATES THAT DEFENDANTS HAVE IMPROPERLY USED THE COLOR OF THEIR AUTHORITY TO PREVENT THE LAWFUL SALE OF FIREARMS IN NEW JERSEY.**

To be clear, in their most recent submission, Defendants have astoundingly admitted that (1) the July 17th correspondence from Lt. Stephen Mazzagatti is not a "final determination" as to the legality of selling the Reformation in the State of New Jersey and (2) there is no mechanism for a firearms dealer and/or manufacturer – such as Plaintiff – to obtain (or appeal) a determination as to the legality of a particular firearm within the State of New Jersey. Instead, Defendants' position appears to be that prior to selling firearms in New Jersey, a manufacturer is required to first seek a declaratory judgment from the courts regarding the legality of such a sale. This is nonsensical and unsupported by any legal authority. There is no obligation for a manufacturer to seek a legal determination from the courts *prior* to selling a lawful product. Indeed, such a lawsuit would be dismissed due to lack of standing and for being unripe. Additionally, Defendants' position would not only inappropriately place unwarranted requirements on firearms manufacturers and sellers but would also place a significant burden on the courts.

Moreover, Defendants' current position is tantamount to an admission that they have capriciously and unjustifiably prevented the lawful commerce of firearms within this State. As alleged in the Complaint, Plaintiff had contracts with local retailers for the sale of the Reformation and was starting to commence distribution into the State. (Dkt. No. 1, ¶¶ 28-31.) Although the State Police twice confirmed that the Reformation was "eligible for sale" in New Jersey, Plaintiff was asked by the State Police to submit a formal letter describing the characteristics of the firearm, and Plaintiff complied with this request. (Id. ¶¶ 29-31.) Thereafter, Defendants advised that they were in the process of providing a formal opinion from the Office of the Attorney General and

instructed Plaintiff not to sell the Reformation in New Jersey until receiving this formal determination. (Id. ¶ 33.) Plaintiff again complied with this request. (Ibid.) However, while awaiting a response from the Attorney General, Plaintiff discovered that the State Police had been contacting licensed firearms dealers about the Reformation and at least one licensed firearms dealer cancelled its order after being contacted by the State Police. (Ibid.)

When Defendants failed to provide any formal opinion after significant time had elapsed, and after multiple inquiries went unanswered, Plaintiff advised that it would re-commence its distribution of the Reformation to licensed firearms dealers in New Jersey. (Id. ¶ 38.) However, via correspondence from the State Police, Plaintiff was expressly prohibited from commencing such sales:

> [T]he sale of the firearms in question **will not occur in the State** until we have heard from our legal counsel. **We will advise all licensed retail firearms dealers in the State to suspend any sales of this product, until the Attorney Generals [sic] office has made a final determination on the legality of the product.**

(Dkt. No. 1, ¶¶ 38-39 (emphasis added).) In other words, without due process and without any legal support, Plaintiff was prohibited from lawfully selling its products in New Jersey. (Id. ¶ 40.) Defendants' final response, not from the Attorney General's office, was another letter from the State Police (Lr. Mazzagatti), which contradicted the prior letters by misapplying the law and now advising that the Reformation had "characteristics of shotguns." (Id. ¶¶ 41-45.) To date, Plaintiff has not received any further correspondence from Defendants.

Through their supplemental submission, Defendants now aver that not only was this July 17th correspondence not a final determination but that there is actually no mechanism for obtaining a formal determination and that the State Police are not authorized to do so. Defendants' current position clearly begs the question: if there is no process for obtaining a formal determination and Defendants never intended to provide one, what did Defendants mean when they instructed

4

Franklin Armory not to sell any firearms in the State "until the Attorney General's office has made a final determination on the legality of the product"? Moreover, if there is no formal procedure in place, or even a requirement, to obtain a determination on the legality of the product and the State Police does not, in fact, provide such a determination, what authorized Defendants to expressly prohibit Plaintiff from selling the Reformation in New Jersey or to "advise all licensed retail firearms dealers in the State to suspend any sales of this product"? As conceded by Defendants' supplemental briefing, they had no such authority. And this is one of the main issues raised in Plaintiff's Complaint: that Defendants, under the guise of legal authority but without a basis in law, have improperly and unjustifiably prohibited and prevented Plaintiff from engaging in lawful commerce within this State.

To make matters worse, Defendants improperly take a myopic view of Plaintiff's allegations. While Plaintiff certainly seeks a declaratory judgment that it can lawfully sell its product in New Jersey and that Defendants have no authority to prevent the lawful sales, the lawsuit alleges far more than a mere misinterpretation of the law. Given the factual allegations, Defendants actively sought to prevent the sale of a lawful product in New Jersey by, among other things, telling dealers to cease sales and instructing Plaintiff not to sell the Reformation in New Jersey. They did this despite – as they have now conceded – Defendants having no legal authority to do so and no ability, or intention, to *ever* provide "a final determination on the legality of the product." Thus, it appears that Defendants were not truthful with Plaintiff in an attempt to stop or indefinitely stall the legal sale of the Reformation in New Jersey.

Notably, Plaintiff was under the misapprehension that it was working with Defendants to ensure all formalities were covered and all requirements were met prior to commencing sales. Thus, when the State Police instructed Plaintiff to submit design specifications regarding the

5

Reformation and to delay the sale of the Reformation in New Jersey until a formal determination was provided, Plaintiff complied. However, it is now apparent that Defendants were attempting to indefinitely "ice the puck" with regard to the sale of the Reformation in the State of New Jersey and were doing so without any legal authority. It would be one thing if Defendants had a set process in place for approving firearms and then provided a formal determination that the product was unlawful. However, it is quite a different situation to make no final determination on the issue and have no formal process in place to approve the legality of a firearm, but nonetheless actively interfere with and prevent lawful commerce. This latter situation is precisely what occurred here. Indeed, Defendants' conduct has not merely infringed upon lawful commerce, but it has caused significant injury to Plaintiff, both through the loss of sales and reputational damage. Accordingly, Plaintiff respectfully seeks to have these ripe legal matters addressed and resolved through the judicial process, especially since it is now abundantly clear that Plaintiff has no other recourse.

## II. PLAINTIFF HAS STANDING AND THIS LAWSUIT IS RIPE AS THERE IS AN ACTUAL CASE OR CONTROVERSY.

As articulated above (Argument Section I), while Plaintiff seeks declaratory relief, this lawsuit also seeks redress for monetary damages that Plaintiff has incurred and is incurring. Specifically, Defendants interfered with, and unjustifiably prevented, the lawful sale of Plaintiff's products by, among other things, contacting retailers and using the color of their authority to prohibit Plaintiff from selling the Reformation in New Jersey. To this end, Plaintiff alleges that due to Defendants' conduct and actions, Plaintiff has been prevented from selling and shipping any Reformations into New Jersey, despite intending to commence sales in early 2019. Additionally, licensed retailers that had contracts to purchase the Reformation have cancelled their orders due to Defendants' conduct. As noted in the Complaint, Defendants expressly sought to "advise all licensed retail firearms dealers in the State to suspend any sales of this product," despite

the fact that they had no legal authority to do so. Due to Defendants' conduct, Plaintiff has incurred significant damages, both monetarily and reputationally. These are concrete injuries and provable harms.

In terms of Plaintiff's request for declaratory relief, even Defendants concede – as they must – that this issue is ripe for adjudication and that there is standing. See Free Speech Coal., Inc. v. Att'y Gen. of United States, 825 F.3d 149, 167 n. 15 (3d Cir. 2016) ("[W]hether Plaintiffs have standing   or their claims are ripe . . . both turn on whether the threat of future harm . . . is sufficiently immediate to constitute a cognizable injury."). Given the facts alleged in the Complaint, as well as Defendants' current concessions in their supplemental filing, the dispute at issue is "sufficiently concrete to satisfy the constitutional and prudential requirements of the [ripeness] doctrine." Pittsburgh Mack Sales & Serv., Inc. v. Int'l Union of Operating Engineers, Local Union No. 66, 580 F.3d 185, 190 (3d Cir. 2009).

Here, the injuries to Plaintiff are not speculative as the facts alleged demonstrate that, whether the July 17th letter was a "final determination" or not, Plaintiff has been restrained by Defendants from selling the Reformation in New Jersey and licensed firearms dealers have been prevented from acquiring the Reformation for sale.[1] Indeed, if this letter is not a final determination and there is never going to be a final determination (as Defendants now concede), then there was absolutely no authority for Defendants to request information about the Reformation or to prevent the lawful sales of these firearms in the first place while purportedly

---

[1] Indeed, although Defendants note that this July 17th letter was not a "final determination," this label is not definitive for purposes of ripeness. See Bennett v. Spear, 520 U.S. 154, 178 (1997) (holding that a decision may be "final" for purposes of ripeness when it is one from which legal consequences will flow and/or has "direct and appreciable legal consequences"). Here, it is without dispute that Defendants prohibited Plaintiff from selling its product in the State, which means the issues are ripe and Plaintiff has standing.

waiting to provide a determination as to the firearm's legality. Instead, as alleged by Plaintiff and implicitly conceded by Defendants in their supplemental submission, Defendants improperly used the color of their authority – without any legal basis – to not merely frustrate but to wholly prevent the lawful sales of the Reformation into the State of New Jersey. Here, the State Police (1) required Plaintiff to submit specifications for its firearm; (2) informed Plaintiff that the firearm was legal; (3) despite this, requested that Plaintiff not distribute any firearms into the State until a "final determination" had been made by the Attorney General's Office; and (4) contacted in-state firearms retailers to advise them not to sell the firearm. As we now know, there was no authority for any of Defendants' actions, there was never going to be a final determination from the Attorney General's Office, and there is no process for obtaining a final determination.[2]

Moreover, Defendants' admissions that there is never going to be a "final determination" by the Attorney General regarding the legality of the Reformation and that there is no process or procedure in place to obtain (or appeal) any such determination conclusively demonstrate the viability of Plaintiff's procedural due process claims.[3] These admissions establish that there is no process for administrative review or appeal of Defendants' determinations, and as such, Plaintiff is left without any other recourse but to seek the Court's intervention. See, e.g., Peachlum v. City of York, Pa., 333 F.3d 429, 433 (3d Cir. 2003) (noting that final administrative determination is favored under the ripeness doctrine when "a dispute arises under circumstances that permit

---

[2] It bears repeating that Defendants instructed Plaintiff not to sell the Reformation into New Jersey and advised that they were instructing licensed firearms dealers in New Jersey not to purchase or sell the Reformation. Faced with such an express instruction, no reasonable manufacturer would attempt to sell firearms within New Jersey, and, in fact, Plaintiff has not done so.

[3] Defendants also implicitly concede that there is no specific entity that has final responsibility for making such a determination.

administrative review"). Since there is no mechanism for administrative review or for appeal, Plaintiff's claim is assuredly fit for adjudication. Ibid.

### III. *PULLMAN* ABSTENTION IS NOT WARRANTED.

Conceding that Plaintiff's claims are ripe and implicitly recognizing that they had no authority to prohibit Plaintiff from selling the Reformation in New Jersey, Defendants resort to arguing that the Court should nonetheless avoid addressing the merits of this matter due to the Pullman abstention doctrine. (Dkt. No. 18 at p. 3-9.) Simply, Defendants misunderstand the purposes of, and requirements for, Pullman abstention, which should only be utilized in "exceptional" cases. (Id. at p. 3.) This is not such a case.

Pullman abstention "does not, of course, involve the abdication of federal jurisdiction, but only the postponement of its exercise." Harrison v. NAACP, 360 U.S. 167, 177 (1959). Thus, when assessing the applicability of this doctrine, the standard under Rule 12(b)(6) should be adhered to, which means that the Court will accept "all well pleaded allegations in the complaint as true," "viewing them in the light most favorable to the plaintiff." Trump for President, Inc. v. Boockvar, 2020 WL 4920952, at *3 (W.D. Pa. Aug. 23, 2020) (quoting Warren Gen. Hosp. v. Amen inc., 643 F.3d 77, 84 (3d Cir. 2011)).

The Pullman abstention doctrine "directs that federal courts should abstain from rendering a decision when difficult and unsettled questions of state law must be resolved before a substantial federal constitutional question can be decided." Grode v. Mut. Fire, Marine & Inland Ins. Co., 8 F.3d 953, 956 (3d Cir. 1993). Abstention under Pullman "is appropriate where an unconstrued state statute is susceptible of a construction by the state judiciary which might avoid in whole or in part the necessity for federal constitutional adjudication, or at least materially change the nature of the problem." Planned Parenthood of Cent. N.J. v. Farmer, 220 F.3d 127, 149 (3d Cir. 2000).

9

"Pullman abstention is founded on the notion that federal courts should avoid unnecessary federal court review of the constitutionality of state law." United States v. New Mexico Environment Dep't, 2020 WL 1546151, at *7 (D.N.M. Mar. 31, 2020). "The danger is that a federal court may render 'a constitutional determination [ ] predicated on a reading of the [state] statute that is not binding on state courts and may be discredited at any time – thus essentially rendering the federal court decision advisory and the litigation underlying it meaningless." Ibid. (quoting Moore v. Sims, 442 U.S. 415, 428 (1979)). When there is no constitutional challenge to a state law, the Pullman abstention doctrine does not apply. Ibid.; Caldera v. City of Boulder, 341 F. Supp. 3d 1241, 1245 (D. Colo. 2018) (holding that Pullman abstention is appropriate to allow Colorado state court to initially determine whether municipal ordinances governing the use or sale of firearms are preempted by state statute). Here, Plaintiff is not challenging the constitutionality of any state law.

Moreover, the necessary elements for the extraordinary request are not met in this case. First, the state law issues are not uncertain. "[A]bstention is not to be ordered unless the state statute is of an uncertain nature and is obviously susceptible of a limiting construction." Zwickler v. Koota, 389 U.S. 241, 251 n. 14 (1967). Plaintiff has not argued nor contended that the statute at issue is ambiguous. Instead, Plaintiff contends that there is no legal basis to prevent the sale of the Reformation in New Jersey and that Defendants have, under the guise of their legal authority, improperly prevented such sales, which has violated due process. See Hughes v. Lipscher, 906 F.2d 961, 965 (3d Cir. 1990) (explaining that the first factor is not met when the state regulation is "clear and unmistakable"). Second, a decision on the declaratory judgment aspect of this matter will not narrow or eliminate the remaining issues int his case. As noted above, Plaintiff's claims involve concrete and specific damages related to Defendants' conduct in unlawfully preventing

10

the sale of the Reformation in the State of New Jersey. Plaintiff has claims for tortious interference, defamation, and conspiracy, which are separate and apart from any constitutional claims.

Third, failing to abstain would not disrupt state policies nor would it impact New Jersey's commitment to "firearms safety." Again, Plaintiff is not challenging the constitutionality of New Jersey's firearms laws nor is Plaintiff challenging the ability to enact such laws. Rather, through his lawsuit, Plaintiff contends that Defendants arbitrarily and capriciously prevented the sale of a lawful product within its state. Finally, this action has been pending for over one year and it has been almost two years since Plaintiff attempted to begin selling the Reformation in New Jersey. Having the case stayed while this matter is addressed in the state courts will further delay a resolution and continue to harm and damage Plaintiff. For all of the foregoing reasons, Pullman abstention is inappropriate in this case.

## CONCLUSION

Based on the foregoing, Plaintiff respectfully contends that it has stated plausible claims for liability; the claims, including the declaratory judgment claims, are ripe for adjudication; and the Pullman abstention doctrine is not appropriate in this matter.

Dated: Florham Park, New Jersey
October 30, 2020

                Respectfully submitted,

                **PISCIOTTI MALSCH**

          By: s/ Danny C. Lallis
             Danny C. Lallis
             30 Columbia Turnpike, Suite 205
             Florham Park, New Jersey 07932
             Telephone: (973) 245-8100
             Facsimile: (973) 245-8101
             dlallis@pmlegalfirm.com

             **Attorneys for Plaintiff**
             **Franklin Armory, Inc.**

## CERTIFICATE OF SERVICE

I, Danny C. Lallis, attorney for the plaintiff in the above-captioned matter, hereby certify that on the 30th day of October 2020, a true copy of the foregoing was electronically filed and is available for viewing and downloading from the Court's Electronic Filing System ("ECF"), which caused the following parties who are listed as ECF Filing Users to be served by electronic means:

Suzanne Davies, Esq.
Michael Vomacka, Esq.
Deputy Attorney General
R.J. Hughes Justice Complex
P.O. Box 112
25 Market Street
Trenton, New Jersey 08625-0112
suzanne.davies@law.njoag.gov
michael.vomacka@law.njoag.gov

Dated:  Florham Park, New Jersey
        October 30, 2020

By:   s/ Danny C. Lallis
      Danny C. Lallis
      **PISCIOTTI MALSCH**
      30 Columbia Turnpike, Suite 205
      Florham Park, New Jersey 07932
      Telephone:  (973) 245-8100
      Facsimile:   (973) 245-8101
      dlallis@pmlegalfirm.com

      **Attorneys for Plaintiff**
      **Franklin Armory, Inc.**