**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| FRANKLIN ARMORY, INC., | : | |
| | : | Civil Action No.: 19-19323 (FLW) |
| Plaintiff, | : | |
| | : | **OPINION** |
| vs. | : | |
| | : | |
| STATE OF NEW JERSEY, *et al*. | : | |
| | : | |
| Defendants. | : | |
| | : | |

**WOLFSON, Chief Judge:**

Plaintiff Franklin Armory, Inc. ("Franklin Armory" or "Plaintiff"), a firearms manufacturer, alleges that, defendants the State of New Jersey, the New Jersey State Police (the "State Police"), Patrick A. Callahan (in his official capacity as Superintendent of the State of New Jersey Police) ("Callahan"), Gurbir Grewal (in his official capacity as Attorney General of the State of New Jersey) ("Grewal"), and the New Jersey Department of Law and Public Safety (the "Department of Law") (collectively, "Defendants") violated Plaintiff's Second and Fourteenth Amendment rights by precluding Plaintiff from selling the Reformation, one of the firearms it manufactures, to federally licensed firearm retailers in the State of New Jersey. Plaintiff also asserts state law tortious interference and defamation claims. In the instant matter, Defendants move to dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, Defendants' Motion to Dismiss is **GRANTED**. Counts I and II of the Complaint, *i.e*., Plaintiff's Section 1983 and declaratory judgment claims based on alleged violations of the Second and Fourteenth Amendments, against defendants the State of New Jersey, the State Police, and the Department of Law are dismissed with prejudice; however, those claims are dismissed without prejudice with respect to Grewal and Callahan. Plaintiff is given leave to amend its

1

Complaint with respect to the Second and Fourteenth Amendment claims within thirty (30) days in order to replead those claims against Callahan and Grewal, or name new defendants, if appropriate.  Counts III-VIII of the Complaint, which are Plaintiff's claims for tortious interference with contract and tortious interference with economic advantage, defamation, defamation per se, civil conspiracy, and Plaintiff's claim for monetary damages pursuant to Section 1983 are barred by sovereign immunity and dismissed against all Defendants.

## I.      FACTUAL AND PROCEDURAL HISTORY

### A.  The Relevant Firearms Laws

Before recounting the factual background and procedural history of this case, I will briefly review the relevant statutory and regulatory context in which Plaintiff's claims arise. Here, Plaintiff's Second Amendment claim largely challenges Defendants' interpretations of the relevant state and federal firearms laws, specifically, the National Firearms Act of 1934, 26 U.S.C. § 5801 (the "NFA"); the Gun Control Act of 1968, 18 U.S.C. 921 (the "GCA"); and various New Jersey state firearms statutes, N.J. Stat. Ann. §§ 2C:39-1m to -1o, as they related to Plaintiff's firearm, the Reformation.

### i.  The Gun Control Act and the National Firearms Act

The Bureau of Alcohol, Tobacco, Firearms and Explosives ("BATFE") enforces both the NFA and the GCA.  28 C.F.R. § 0.130(a)(1)-(2).  The NFA regulates the sale, ownership, use, and transport of short barreled rifles, short barreled shotguns, machine guns, silencers, suppressors, and "destructive devices."  Under the NFA, a "shotgun" is a

> weapon designed or redesigned, made or remade, and intended to be fired from the shoulder and designed or redesigned and made or remade to use the energy of the explosive in a fixed shotgun shell to fire through a smooth bore either a number of projectiles (ball shot) or a single projectile for each pull of the trigger, and shall include

> any such weapon which may be readily restored to fire a fixed
> shotgun shell.

26 U.S.C. § 5845 (d).  The NFA defines a "rifle" as

> a weapon designed or redesigned, made or remade, and intended to
> be fired from the shoulder and designed or redesigned and made or
> remade to use the energy of the explosive in a fixed cartridge to fire
> only a single projectile through a rifled bore for each single pull of
> the trigger, and shall include any such weapon which may be readily
> restored to fire a fixed cartridge.

26 U.S.C. § 5845 (c).  The GCA provides for the licensing of firearm manufacturers and dealers.

A federal firearms license is required for anyone "engage[d] in the business of importing,

manufacturing, or dealing in firearms," 18 U.S.C. § 923(d)(1), and federally licensed firearm

manufacturers and dealers can ship directly to state licensed firearm retailers. *See* 18 U.S.C. §

923(c).

### ii.  **The State Statutes**

The terms  "rifle" and "shotgun" are also defined under New Jersey law.  Under New

Jersey law, a "shotgun" is

> any firearm designed to be fired from the shoulder and using the
> energy of the explosive in a fixed shotgun shell to fire through a
> smooth bore either a number of ball shots or a single projectile for
> each pull of the trigger, or any firearm designed to be fired from the
> shoulder   which   does   not   fire   fixed   ammunition.

N.J. Stat. Ann. § 2C:39-1(n). A "rifle" is defined as

> any firearm designed to be fired from the shoulder and using the
> energy of the explosive in a fixed metallic cartridge to fire a single
> projectile through a rifled bore for each single pull of the trigger.

N.J. Stat. Ann. § 2C:39-1(m).  New Jersey law prohibits the sale of "sawed off shot guns" and

assault firearms/weapon.  A "sawed-off shotgun" is

> any shotgun having a barrel or barrels of less than 18 inches in length
> measured from the breech to the muzzle, or a rifle having a barrel or

barrels of less than 16 inches in length measured from the breech to the muzzle, or any firearm made from a rifle or a shotgun, whether by alteration, or otherwise, if such firearm as modified has an overall length of less than 26 inches.

N.J. Stat. Ann. § 2C:39-1(o).  Among other things, an assault weapon includes any "semi-automatic shotgun with either a magazine capacity exceeding six rounds, a pistol grip, or a folding stock" and any "[a] semi-automatic rifle with a fixed magazine capacity exceeding 10 rounds," and "[a] part or combination of parts designed or intended to convert a firearm into an assault firearm, or any combination of parts from which an assault firearm may be readily assembled if those parts are in the possession or under the control of the same person."  N.J. Stat. Ann. § 2C:39-1(w)(3-5).

The firearm at issue, the Reformation, allegedly lacks either a smooth or a rifled bore, which – under the statutory definitions – are components of a rifle and a shotgun, respectively, under New Jersey law.

### B.  Plaintiff's Claims

Franklin Armory, a Nevada corporation, is a licensed manufacturer of firearms and firearm parts.[1]  Compl. ¶¶ 6, 20.  One of the firearms manufactured by Plaintiff is the Reformation.  *Id*. at ¶ 20.  The Reformation is a unique firearm that is designed to "expel a single projectile through an unrifled barrel that has straight-cut lands-and-grooves."  *Id*. ¶ 20-23.  In 2018, the BATFE allegedly evaluated the Reformation and classified it as a "firearm" that is not regulated under the NFA because its design includes neither a rifled bore nor provides for the utilization of a fixed

---

[1]    The Complaint does not identify whether Plaintiff is a federally licensed firearm manufacturer, pursuant to the GCA, whether Plaintiff is a New Jersey licensed firearm manufacturer, pursuant to N.J. Stat. Ann. § 2C:58-1, or both.

shotgun shell.  *Id*. at ¶¶ 23-24.  Rather, the BATFE purportedly concluded that the Reformation was a "short-barreled shot gun" within the scope of the GCA,  18 U.S.C. § 921.  *Id*. at ¶ 25.

### i.  Franklin Armory's Attempts to Sell the Reformation in New Jersey

After reviewing New Jersey's firearm laws, Franklin Armory believed it could legally sell the Reformation through federally licensed firearm retailers in the State of New Jersey, and allegedly began taking the necessary steps to do so.  *Id*. at ¶¶ 26-27.  Franklin Armory sought to begin selling the Reformation in New Jersey around April 2019, and entered into "at least one" sales contracts with such a New Jersey retailer, and communicated with others.  *Id*. at ¶ 27.  At that time, one of the New Jersey firearm retailers purportedly contacted the State Police regarding the legality of selling the Reformation in New Jersey.  *Id*. at  ¶ 28.  Allegedly, Detective J. Hearne from the State Police initially advised the retailer that the Reformation "would be eligible for sale in New Jersey" and that the Reformation "currently fits within the laws of the state as legal."  *Id*. ¶ 29.  Subsequently, Detective Hearne contacted Franklin Armory to request a letter formally describing the Reformation's characteristics in order for the State Police to assess the firearm's legality.  *Id*.  at ¶ 30. On or about April 3, 2019, Detective Sergeant Brett Bloom, Assistant Head of the Firearms Investigation Unit, purportedly confirmed in writing that the sale of the Reformation was legal under New Jersey law.[2]  *Id*. at ¶ 32.  However, in the letter, Detective Sergeant Bloom also allegedly expressed his concern that law enforcement might mistake the Reformation for an "assault weapon" or a "sawed-off-shotgun," both of which are prohibited under New Jersey law, which might lead to improper prosecution of individual purchasers.  *Id*. ¶ 33.  Accordingly, Detective Sergeant Bloom instructed Plaintiff not to sell the Reformation in New

---

[2]     Plaintiff has not submitted a copy of Detective Sergeant Bloom's letter as an exhibit to either the Complaint or its opposition brief.

Jersey until receiving a "legal opinion" from the Office of the Attorney General.  *Id*.  In response to Detective Sergeant Bloom's letter, Franklin Armory agreed to temporarily delay selling the Reformation in New Jersey.  *Id*. at ¶ 35.  While the State's response was pending, Franklin Armory was advised by at least one of its retail clients that the State Police had contacted the store.  *Id*. at ¶ 37.  As a result of its communication(s) with the State Police, the firearms dealer apparently cancelled its Reformation order.  *Id*. fssff sdf

Thirty days following the State Police's inquiry, Franklin Armory informed the State Police of its intention to begin selling the Reformation on April 29, 2019.  *Id*. at ¶ 38.  Detective Sergeant Bloom responded to Franklin Armory's letter and allegedly prohibited it from engaging in the sale of the Reformation, until the Office of the New Jersey Attorney General weighed in on the Reformation's legality.  *Id*. at ¶ 39.  The letter purportedly advised: "[T]he sale of the firearms in question will not occur in the State until we have heard from our legal counsel.  We will advise all licensed retail firearms dealers in the State to suspend any sales of this product, until the Attorney Generals [sic] office has made a final determination on the legality of the product." *Id*.[3]

Several weeks later, Franklin Armory's legal counsel contacted Deputy Attorney General MaryBeth Woods via telephone to discuss the situation.  *Id*. at ¶ 41.  On July 17, 2019, Lt. Stephen Mazzagatti of the New Jersey State Police informed Franklin Armory, by letter, that the Firearms Investigation Unit had concluded that the Reformation was a shotgun within the meaning of N.J. Stat. Ann. § 2C:39-1.n, because "the barrels are not rifled, the firearms are designed to fire from the shoulder, and the firearms fire a single projectile for each pull of the trigger."  *See* ECF No.

---

[3]    Plaintiff has not submitted a copy of Detective Sergeant Bloom's April 29, 2019 letter as an exhibit to either the Complaint or its opposition brief.

11-3, Certification of Michael Vomacka ("Vomacka Cert."), Ex. A, July 17, 2019 Letter.[4] Moreover, the letter explained that, "the Bureau of Alcohol, Tobacco, Firearms and Explosives, has designated one of the models as a 'short-barreled shotgun' under the Gun Control Act (GCA)." *Id*. Accordingly, the letter advised that the Reformation could not be sold because the "length of [the] barrel is less than eighteen inches" and it had a magazine capacity greater than six rounds; therefore, it did "not meet the statutory requirements of legal shotguns in New Jersey." *Id*. The letter further provided that it was "not intended as legal advice but [was] offered for informational purposes only" and encouraged Franklin Armory to "consult a licensed attorney in the State of New Jersey for legal advice regarding firearms and firearms sales in New Jersey." *Id*.

In its Complaint, Franklin Armory contends that Lieutenant Mazzagatti's letter misapplied the definition of shotgun and contradicted the prior guidance from the New Jersey State Police. *Id*. at ¶¶ 44-46. Franklin Armory's Complaint seeks a declaration, pursuant to 28 U.S.C. § 2201, that Defendants' conduct violates the Second Amendment and the due process clause of the Fourteenth and Fifth Amendments, and also asserts an identical count seeking a declaration pursuant to 42 U.S.C. § 1983. Compl., Count I-II. Plaintiff also asserts claims for tortious interference with contract and tortious interference with economic advantage, defamation,

---

[4]    Defendants submitted the New Jersey State Police's July 17, 2019 letter as an exhibit to their motion papers, and the Court may consider the exhibit because the Complaint specifically references the document and it forms the basis of Plaintiff's claims. *See Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) ("In evaluating a motion to dismiss, we may consider documents that are attached to or submitted with the complaint, and any matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, and items appearing in the record of the case."); *In re Donald J. Trump Casino Sec. Litig.-Taj Mahal Litig.*, 7 F.3d 357, 368 n.9 (3d Cir. 1993) ("[A] court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.").

defamation per se, civil conspiracy and a violation of Section 1983.[5]  Compl., Counts, III-VIII.
Defendants subsequently moved to dismiss.  In a prior order, I directed the parties to submit
supplemental briefing regarding the ripeness of Plaintiff's claims and, correspondingly, what
procedures exist for an out-of-state firearm manufacturer to obtain a formal opinion on the legality
of selling a particular firearm in New Jersey, and the mechanism for appealing such an opinion, if
any.  *See* ECF No. 17, September 28, 2020 Letter Order.  With that briefing completed, I, now,
render my decision.

## II.   <u>STANDARD OF REVIEW</u>

In reviewing a motion to dismiss for failure to state a claim upon which relief can be
granted, pursuant to Federal Rule of Civil Procedure 12(b)(6), "courts accept all factual allegations
as true, construe the complaint in the light most favorable to the plaintiff, and determine whether,
under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v.*
*UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (internal quotation marks and citation
omitted). While Federal Rule of Civil Procedure 8(a)6 does not require that a complaint contain
detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment]
to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of
a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation
omitted).  Thus, to survive a Rule 12(b)(6) motion to dismiss, the Complaint must contain
sufficient factual allegations to raise a plaintiff's right to relief above the speculative level, so that
a claim "is plausible on its face." *Id.* at 570; *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d
Cir. 2008).  "A claim has facial plausibility when the plaintiff pleads factual content that allows

---

[5]     Plaintiff's Complaint contains two separate counts alleging violations of Section 1983;
Count Two expressly seeks declaratory relief under Section 1983, while Count VIII is silent as to
the precise relief sought, but presumably it seeks monetary damages.

the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To determine whether a plaintiff has met the facial plausibility standard mandated by Twombly and Iqbal, courts within this Circuit engage in a three-step progression. *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). First, the court must "outline the elements a plaintiff must plead to state a claim for relief." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012). Next, the Court "peel[s] away those allegations that are no more than conclusions and thus not entitled to the assumption of trust. *Id*. Finally, where "there are well-pleaded factual allegations, the court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

III.   **ANALYSIS**

A.   **Ripeness**

"[R]ipeness is peculiarly a question of timing." *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580 (1985). "The ripeness doctrine prevents judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Lauderbaugh v. Hopewell Twp.*, 319 F.3d 568, 575 (3d Cir. 2003). The doctrine requires courts to consider "whether a party has brought an action prematurely, and counsels abstention until such time as a dispute is sufficiently concrete to satisfy the constitutional and prudential requirements of the doctrine." *Pittsburgh Mack Sales & Serv., Inc. v. Int'l Union of Operating Engineers, Local Union No. 6*6, 580 F.3d 185, 190 (3d Cir. 2009). With respect to a decision by an administrative agency, such as the New Jersey State Police, ripeness considerations examine (1) "the fitness of the issues for judicial decision" and (2) "the hardship to the parties of

withholding court consideration."[6]  *N.Y. Shipping Ass'n, Inc. v. Waterfront Comm'n of N.Y. Harbor*, 460 F. Appx. 187, 189 (3d Cir. 2012) (quoting *Ohio Forestry Ass'n, Inc. v. Sierra Club*, 523 U.S. 726, 730 (1998)); *see also Peachlum v. City of York, Pennsylvania,* 333 F.3d 429, 436 (3d Cir. 2003) (explaining ripeness analysis in situations where "enforcement actions are ongoing, but where administrative finality is not yet achieved").  "Whether a question is fit for judicial review depends upon factors such as whether the agency action is final; whether the issue presented for decision is one of law which requires no additional factual development; and whether further administrative action is needed to clarify the agency's position, for example, when the challenged prescription is discretionary so that it is unclear if, when or how the agency will employ it." *Nextel Commc'ns of Mid-Atl., Inc. v. City of Margate*, 305 F.3d 188, 193 (3d Cir. 2002) (quoting *Felmeister v. Office of Attorney Ethics*, 856 F.2d 529, 535–36 (3d Cir. 1988)).

Here, Plaintiff alleges that the basis for its injury is the State Police's opinion regarding the legality of the Reformation, which allegedly precludes Franklin Armory from selling what it believes to be a legal firearm, and caused a New Jersey firearms retailer to rescind its offer to purchase the Reformation, giving rise to, *inter alia*, a Second Amendment violation. *See generally* Compl. However, on its face, the State Police's July 17th Letter professed to be a non-binding opinion letter, and thus it was not clear to this Court whether the letter constituted a final determination by the State of New Jersey regarding whether Plaintiff can sell the Reformation in New Jersey. *See* Vomacka Cert., Ex. A. July 2019 Letter ("I hope this information is helpful and please be advised this is not intended as legal advice but is offered for informational purposes only.

---

[6]  The State Police is an administrative agency. *See Bullet Hole, Inc. v. Dunbar,* 763 A.2d 295, 305 (N.J. App. Div. 2000)("It is undisputed that the State Police is an 'agency' to which the Administrative Procedure Act applies.").

Please consult a licensed attorney in the State of New Jersey for legal advice regarding firearms and firearms sales in New Jersey.").  Accordingly, I issued an order directing the parties to address two issues "1) whether Plaintiff has received a final determination pertaining to Plaintiff's ability to sell the Reformation in the State of New Jersey and 2) detailing the official administrative procedure, if any, pursuant to which a firearm manufacturer may seek a binding opinion regarding the legality of a particular firearm and any applicable appeal procedures," in order to ascertain whether Plaintiff's claims are ripe for adjudication.  September 28, 2020 Letter Order.

In response to the Court's inquiry, Defendants asserted that "the answer to both questions is in the negative."  ECF No. 18, Def. Supp. Br. at 1.  Defendants explained, "Plaintiff has not received a final determination on its ability to sell the Reformation in New Jersey."  *Id*.  Further, Defendants concede that there is "no official administrative procedure by which the New Jersey State Police can render a binding decision on the legality of a particular firearm; and, that being the case, there is no process to appeal."  *Id*. at 2.   Based on these representations, I find that Plaintiff's claims are sufficiently ripe for adjudication., and Defendants do not argue otherwise. [7]

After being contacted by a New Jersey firearms retailer potentially interested in selling the Reformation, the State Police allegedly requested that Franklin Armory submit a letter describing the Reformation's characteristics in order for the State Police to assess the firearm's legality.  Compl. ¶ 30. Initially, the State Police purportedly informed Plaintiff that the Reformation was legal under New Jersey law; however, the State Police representative also allegedly expressed his concern that law enforcement might mistake the Reformation for an "assault weapon" or a "sawed-off-shotgun," both of which are prohibited in this state.  *Id*. ¶ 33.

---

[7]     Indeed, there being no identifiable procedure for adjudicating the legality of a firearm, any conclusion other than ripeness would put the seller and purchaser of such  a firearm in a no man's land with no recourse other than risk violating the law, and then defending such a violation.

Accordingly, Plaintiff was directed, and agreed, to refrain from selling the Reformation in New Jersey until it received a "legal opinion" from the Office of the Attorney General. *Id.* at ¶¶ 33,35. Further, the State Police indicated that it would "advise all licensed retail firearms dealers in the State to suspend any sales of this product, until the Attorney Generals [sic] office has made a final determination on the legality of the product." *Id.* at 39. Then, on July 17, 2019, the State Police – not the Attorney General – informed Franklin Armory, via letter, that the Firearms Investigation Unit had concluded that the Reformation could not legally be sold in New Jersey, but also advised that the letter was "informational" only. Vomacka Cert., Ex. A.

Thus, it appears that the administrative action, here, is for all intents and purposes a final determination. Although Defendants assert that the State Police's July 17th Letter was not a final decision regarding the legality of the Reformation, their position on this motion acknowledges that New Jersey state law does not provide a mechanism for Plaintiff to receive such a determination. Indeed, Plaintiff has not, to date, received the purportedly promised legal opinion from the Attorney General. Further, Defendants instructed Plaintiff to refrain from selling the Reformation in New Jersey and advised that they would instruct licensed firearms dealers in New Jersey not to purchase or sell the Reformation. Notably, the latter action, alone, would effectively preclude Plaintiff from selling the Reformation in New Jersey, even if Plaintiff were willing to risk violating the State Police's professedly informal assessment. Accordingly, I find that the July 17th Letter and the other prior correspondence with the New Jersey State Police are, in effect, a final determination, because they restrained licensed retail firearms dealers from selling the Reformation in New Jersey, which would cause them to refrain from purchasing the Reformation from Plaintiff; there is no indication that any other determination is forthcoming or available.

**B.  The *Pullman* Abstention Doctrine**

In response to the Court's inquiry regarding ripeness, Defendants conceded that Plaintiff's claims are ripe, but nonetheless, for the first time, they argue that this Court should abstain from hearing this matter pursuant to *Railroad Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496 (1941).[8] Def. Supp. Letter at 3 ("even though Plaintiff's claims are ripe, this is one of the exceptional cases in which *Pullman* abstention is warranted.").

"Abstention is an 'extraordinary and narrow exception to the duty of a [d]istrict [c]ourt to adjudicate a controversy properly before it' and one which should be invoked 'only in the exceptional circumstances.'" *Planned Parenthood of Cent. New Jersey v. Farmer*, 220 F.3d 127, 149 (3d Cir. 2000) (quoting *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 813 (1976)). The *Pullman* abstention doctrine "directs that federal courts should abstain from rendering a decision when difficult and unsettled questions of state law must be resolved before a substantial federal constitutional question can be decided." *Grode v. Mut. Fire, Marine & Inland Ins. Co.*, 8 F.3d 953, 956 (3d Cir. 1993) (internal citations and quotation marks omitted). More precisely, abstention under *Pullman* "is appropriate where an unconstrued state statute is susceptible of a construction by the state judiciary which might avoid in whole or in part the necessity for federal constitutional adjudication, or at least materially change the nature of the problem." *Farmer*, 220 F.3d at 149. Three "exceptional circumstances" must be present in order for a court to abstain under *Pullman*: (1) "[t]here are uncertain issues of state law underlying the federal constitutional claims brought in federal court"; (2) "[t]he state law issues are amenable to

---

[8]    Notably, Defendants did not raise the issue of *Pullman* abstention in their initial motion to dismiss, and this argument is far beyond the scope of the limited supplemental briefing the Court requested. The request for supplemental briefing was limited to two discrete issues and should not have been construed as an opportunity for Defendants to raise new issues and arguments, without seeking the Court's permission. Nonetheless, since Plaintiff has had the opportunity to respond, the Court considers Defendants' arguments.

a state court interpretation that would obviate the need for, or substantially narrow, the scope of adjudication of the constitutional claims"; and (3) "[a] federal court's erroneous construction of state law would be disruptive of important state policies." *Chez Sez III Corp. v. Township of Union*, 945 F.2d 628, 631 (3d Cir. 1991). If all three circumstances are present, a court must exercise its discretion to determine whether abstention is appropriate "by weighing such factors as the availability of an adequate state remedy, the length of time the litigation has been pending, and the impact of delay on the litigants." *Farmer*, 220 F.3d at 150; *see also* "*Chez Sez*, 945 F.2d at 631 (explaining that if all three special circumstances exist, the district court "must then make a discretionary determination as to whether abstention is in fact appropriate under the circumstances of the particular case, based upon the weight of these criteria and other relevant factors.")

Here, Defendants argue that all three of the *Pullman* abstention factors are present because 1) "Franklin Armory's federal claims hinge on whether the Reformation complies with New Jersey criminal law," a novel question under New Jersey state law, *id*. at 5; 2) Plaintiff is challenging the enforcement and application of New Jersey state firearms laws, rather than the statutes themselves, and thus ["a] state court determination, regardless of the outcome, eliminates any procedural due process claim," *id*. at 6; and 3) an erroneous construction of state criminal law by the federal courts would "disrupt important state policies," regarding New Jersey's gun control laws and the "the sensitive relation between federal and state criminal jurisdiction." *Id*. at 6-7.

In response, Plaintiff argues that *Pullman* abstention is not warranted. In Plaintiff's view, this lawsuit does not implicate uncertain issues of state law because Plaintiff is not seeking to invalidate the relevant statutes and "has not argued nor contended that the statute at issue is ambiguous." ECF No., 19. Pl. Supp. Br. at 10. Rather, **"**Plaintiff contends that there is no legal basis to prevent the sale of the Reformation in New Jersey and that Defendants have, under the

guise of their legal authority, improperly prevented such sales, which has violated due process." *Id*. Further, Plaintiff asserts that a declaratory judgment would neither narrow nor eliminate the issues presented. *Id*. at 10. Finally, Plaintiff argues that declining to abstain would not impact important state policies because "Plaintiff is not challenging the constitutionality of New Jersey's firearms laws nor is Plaintiff challenging the ability to enact such laws." *Id*. at 11.

The Court finds that the "exceptional circumstances" requisite for *Pullman* abstention are not present in this case, because Plaintiff's constitutional claims do not satisfy the third *Pullman* factor. With respect to the first factor, this case presents two separate constitutional claims, Plaintiff's Second Amendment and Fourteenth Amendment claims, both of which involve an unsettled question of state law, *i.e.*, whether the Reformation is illegal under the New Jersey firearms statutes. With respect to the second *Pullman* factor, however, the analysis of the two claims diverges, slightly. Plaintiff's Second Amendment claims could certainly be narrowed by a state court ruling that the Reformation does, in fact, comply with the New Jersey law and may be sold in New Jersey; indeed, "that would obviate the need for . . . [the] adjudication of the constitutional claim[]." *Chez Sez*, 945 F.2d at 631. In contrast, the application of the second *Pullman* factor to Plaintiff's Fourteenth Amendment claim is less clear. State court interpretation of the relevant firearms statute would not "obviate or substantially narrow" Plaintiff's Fourteenth Amendment claim, because that claim involves an inquiry regarding whether the manner in which Defendants sought to enjoin the sale of the Reformation complied with the Procedural Due Process Clause. Regardless of how the state court interprets the firearms statutes, and applies them to the Reformation, the court would still need to analyze whether Plaintiff was provided sufficient procedures to protect its Second Amendment rights. Accordingly, it does not appear that the second Pullman factor is satisfied with respect to Plaintiff's Fourteenth Amendment claim.

However, regardless of the second factor, I find that *Pullman* abstention is inappropriate because neither constitutional claim satisfies the third *Pullman* factor: "[a] federal court's erroneous construction of state law would be disruptive of important state policies." *Chez Sez*, 945 F.2d at 631. Critically, here, Plaintiff does not challenge the constitutionality of, or seek to wholly invalidate the relevant firearms statutes, but rather, challenges the statutes' applications to the Reformation -- an unique and novel firearm. There is little potential of disruption to important state policies because an erroneous ruling would be limited to the Reformation and would not disrupt New Jersey's general public policy in favor of gun control. *C.f. Presbytery of New Jersey of the Orthodox Presbyterian Church v. Whitman,* 99 F.3d 101, 107 (3d Cir. 1996) (finding that potential for disruption of important state policies was "manifest" where plaintiff brought first amendment challenge to New Jersey Law Against Discrimination provision ("NJLAD") because NJLAD was a "powerful tool in New Jersey's war against discrimination" and an erroneous conclusion "could eviscerate the entire aiding and abetting prohibitions"). Accordingly, I do not find that *Pullman* abstention is warranted.

## C. Plaintiff's State Law Claims

### i. Sovereign Immunity and Plaintiff's State Law Claims

Defendants argue that Plaintiff's claims based upon state law – defamation, defamation per se, tortious interference with a contract, tortious interference with a prospective economic advantage and civil conspiracy – against all Defendants must be dismissed.[9] Def. Reply Br.at 1-

---

[9]      In their moving brief, Defendants argued only that Plaintiff's tortious interference with economic advantage and tortious interference with contract claims were barred as a result of Eleventh Amendment sovereign immunity, because they fell outside the scope of New Jersey's limited waiver of sovereign immunity pursuant to the TCA. *See* Def. Br. at 24-25 (citing N.J. Stat. Ann. 59:13-3; *Allen v. Fauver*, 768 A.2d 1055 (N.J. 2001)). Defendants raised the argument that the Eleventh Amendment poses a total bar to Plaintiff's state law claims for the first time in their reply brief. Although arguments in reply briefs generally are not considered, sovereign immunity

2.  The parties do not dispute that Plaintiff's constitutional claim and Plaintiff's defamation claims both fall within the clearly recognized exceptions to Eleventh Amendment immunity; the constitutional claims seek prospective relief and the state has waived sovereign immunity for torts, including defamation, pursuant to New Jersey's Tort Claims Act (the "TCA").  *See* N.J. Stat. Ann. § 59:1-1.  However, Defendants, relying on New Jersey's Contractual Liability Act (the "CLA"), contend that both the tortious interference with contract and tortious interference with economic advantage claims must be dismissed because the state has not waived sovereign immunity for consequential damages and punitive damages in contract actions.  *See* Def. Br. at 24-25.

In response, Plaintiff argues that sovereign immunity does not bar either claim because they are not contract claims.  Pl. Br. at 29.  Plaintiff contends that the claims "do not arise from an implied warranty or an implied contract; they arise from Defendants' tortious conduct."  *Id*.  I agree.

The parties' arguments about the TCA are wholly inapposite, because, as explained *infra*, regardless of whether the state has waived its immunity from suit in state court under the TCA, the state is still immune from suit on state law claims in federal court.  The TCA does not expressly permit suit in federal court and therefore does not constitute an Eleventh Amendment waiver.

The Eleventh Amendment to the United States Constitution provides that "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state."  U.S. Const. amend. XI.  The amendment affords states and state agencies

---

may be raised at any time.  *Lombardo*, 540 F.3d at 198 ("issues of state sovereign immunity may be raised at any time, including for the first time on appeal even if the state defended the merits of the suit in the district court."  (internal quotation marks omitted)).

immunity from suits brought by citizens in federal court, regardless of whether legal or equitable relief is sought. *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 100-01 (1984); *see also Thorpe v. New Jersey*, 246 F. App'x. 86, 87 (3d Cir. 2007) ("The Eleventh Amendment of the U.S. Constitution protects a state or state agency from a suit brought in federal court by one of its own citizens regardless of the relief sought...."). Eleventh Amendment immunity from suit also extends to agencies, departments, and officials of the state when the state is the real party in interest. *Alabama v. Pugh*, 438 U.S. 781, 781 (1978); *Pa. Fed'n of Sportsmen's Clubs, Inc. v. Hess*, 297 F.3d 310, 323 (3d. Cir. 2002); *Chisolm v. McManimon*, 275 F.3d 315, 323 (3d Cir. 2001). Suits against state officials in their official capacities are barred by the Eleventh Amendment, "because it is merely another way of pleading an action against the state." *Shahin v. Delaware*, 563 F. App'x. 196, 198 (3d Cir. 2014); *see also Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70-71 (1989). There are only three narrowly circumscribed exceptions that have been established to limit the breadth of the Eleventh Amendment: "1) congressional abrogation, 2) state waiver, and 3) suits against individual state officers for prospective relief to end an ongoing violation of federal law." *MCI Telecomm. Corp. v. Bell Atl. Pennsylvania,* 271 F.3d 491, 503 (3d Cir. 2001). Here, the only exception potentially applicable to Plaintiff's state law claims is waiver.

In order for a state to waive its sovereign immunity, "[t]he state either must voluntarily invoke our jurisdiction by bringing suit ... or must make a clear declaration that it intends to submit itself to our jurisdiction." *Id*. at 504 (internal quotation marks omitted). "Waiver of Eleventh Amendment immunity will be found 'only where the state's consent is stated by the most express language or by such overwhelming implications from the text as [will] leave no room for any other reasonable construction.'" *Allen v. New Jersey State Police*, 974 F.3d 497, 505 (3d Cir. 2020)

(quoting *M.A. ex rel. E.S. v. State-Operated Sch. Dist. of City of Newark,* 344 F.3d 335, 345 (3d Cir. 2003)).

As the Third Circuit has recently explained, "the New Jersey Tort Claims Act does not constitute waiver of immunity from suit in federal court; the statute reflects a limited waiver only of the State's immunity from suit in *state* court." *Allen*, 974 F.3d at 505 (citing *Velez v. City of Jersey City*, 850 A.2d 1238, 1241–42 (N.J. 2004)); *see also Hyatt v. County of Passaic,* 340 F. App'x. 833, 837 (3d Cir. 2009) ("The TCA, which allows suits against public entities and their employees in state courts, does not expressly consent to suit in federal courts and thus is not an Eleventh Amendment waiver."); *Mierzwa v. United States,* 282 F. App'x. 973, 976 (3d Cir. 2008) ("[t]he State of New Jersey did not, in enacting the TCA, waive its sovereign immunity as to § 1983 claims in federal court."). Moreover, the State Police and the Department of Law are arms of the state and therefore, sovereign immunity extends to them, as well. *See Allen*, 974 F.3d at 506 (finding that "NJSP is thus deeply integrated into the government and governmental functions of New Jersey. As such, it is a state agency entitled to Eleventh Amendment immunity."); *Brown v. Michaelowski*, No. 13-4939, 2014 WL 3731336, at *5 (D.N.J. July 28, 2014) (dismissing claims against the Department of Law as barred by Eleventh Amendment).

Similarly, individual state employees sued in their official capacity are also entitled to Eleventh Amendment immunity because "official capacity suits generally represent only another way of pleading an action against the state." *Betts v. New Castle Dev. Ctr.*, 621 F.3d 249, 254 (3d Cir. 2010). Thus, the official capacity claims against the Superintendent of the State Police and the Attorney General– the only types of claims Plaintiff brings against the Individual Defendants – are also subject to a sovereign immunity defense. *Allen*, 974 F.3d at 506 (dismissing claims against the Superintendent of the State Police as barred by the Eleventh Amendment); *Rodriguez*

*v. City of Camden,* No. 09-1909, 2010 WL 2869132, at *4 (D.N.J. July 16, 2010) (dismissing plaintiff's state law claims against, *inter alia*, the Attorney General as barred by the Eleventh Amendment).

Accordingly, Plaintiff's state law claims for tortious interference with contract, tortious interference with prospective economic benefit, defamation, and defamation per se and civil conspiracy are dismissed.[10]

### D. **Plaintiff's Constitutional Claims**

Plaintiff's constitutional claims are brought pursuant to both 42 U.S.C. § 1983 and 28 U.S.C. § 2201.  At the outset, Defendants seek dismissal of Plaintiff's claims for monetary damages under Section 1983, arguing that "Defendants are not 'persons' amenable to suit for monetary damages under the statute."  Def. Br. at 15.

Section 1983 does not create a substantive right, but instead provides a remedy for the violation of rights created by federal law.  *Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985).  To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution or laws of the United States and that the alleged deprivation was committed or caused by a person acting under color of state law.  *Tormasi v. Lanigan*, 363 F. Supp. 3d 525, 534 (D.N.J. 2019); *Harvey v. Plains Twp. Police Dep't*, 635 F.3d 606, 609 (3d Cir. 2011).  The statue provides, in relevant part:

> Every *person* who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the

---

[10]      Although Plaintiff cannot pursue the state law claims against Defendants in this Court, sovereign immunity presumably would not preclude Plaintiff from proceeding in New Jersey state court because Plaintiff has complied with the requirements of the TCA.

> Constitution and laws, shall be liable to the party injured in an action
> at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983 (emphasis added). "The statute's text is clear: a § 1983 suit may only be brought against a defendant who is considered a 'person' within the meaning of §1983." *Smith v. New Jersey*, 908 F. Supp. 2d 560, 563 (D.N.J. 2012). It is well-established that the State and state entities are not "persons" for purposes of §1983, and thus, are not amenable to suit for monetary damages under that statute. *See Will*, 491 U.S. at 71 (holding that states and state officials, acting in their official capacity, are not "persons" under Section 1983).

Here, Plaintiff's Section 1983 claims, to the extent they seek monetary damages, are dismissed. The State of New Jersey, the State Police, and the Department of Law, are not "persons" amendable to suit for monetary damages under Section 1983. *See Smith v. New Jersey,* 908 F. Supp. 2d 560, 564 (D.N.J. 2012) (dismissing plaintiff's claims against the State of New Jersey, the New Jersey State Police and [a new jersey state trooper] in his official capacity" because defendants were not "persons within the meaning of the statute"); *Johnson v. New Jersey*, No. 03-1538, 2006 WL 8458244, at *3 (D.N.J. Mar. 30, 2006) (dismissing Section 1983 claim against the Department of Law because is not a "person" subject to liability under § 1983). Similarly, state actors in their official capacities are not persons who may be sued for monetary damages under Section 1983. *See Will*, 491 U.S. at 71. A suit against a state official in his or her official capacity "is not a suit against the official but rather is a suit against the official's office.... As such, it is no different from a suit against the State itself." *Id*. at 71; *see also Spageage Consulting Corp. v. Porrino*, No. 17-6299, 2018 WL 1169133, at *2 (D.N.J. Mar. 6, 2018) ("[T]he New Jersey Attorney General acting in his official capacity is not subject to liability under Section 1983, because he is not deemed to be a person within the language of Section 1983."); *Hartfelder v. New Jersey State Police*, No. 16-5461, 2017 WL 3184173, at *4 (D.N.J. July 26, 2017) (dismissing

plaintiff's Section 1983 claims against state troopers, in their official capacity, because defendants were not a "person" within the meaning of the statute). Thus, the Section 1983 claims against the State of New Jersey, the State Police, and the Department of Law are dismissed with prejudice, in their entirety. Similarly, the claims against the individual defendants, Gurbir Grewal and Patrick A. Callahan, (the "Individual Defendants") are dismissed with prejudice, to the extent they seek monetary damages. [11]

Nonetheless, Plaintiff also seeks prospective injunctive relief against Defendants under Section 1983, as well as a declaratory judgment on those claims. "While state officials sued in their official capacity are also not 'persons' subject to a suit for damages under § 1983, an official capacity suit against a state official seeking prospective injunctive relief is not treated as an action against the State." *Weisman v. New Jersey Dep't of Human Servs.,* 817 F. Supp. 2d 456, 464 (D.N.J. 2011) (citing *Will*, 491 U.S. at 71). Accordingly, Plaintiff's declaratory judgment and Section 1983 claims seeking prospective injunctive relief are not claims against the State, and thus, can be brought against the Individual Defendants, only. *See Iles v. de Jongh,* 638 F.3d 169, 177 (3d Cir. 2011) (explaining that "a state employee may be sued in his official capacity only for prospective injunctive relief, because official-capacity actions for prospective relief are not treated as actions against the State." (internal citations and quotation marks omitted)); *McCauley v. Univ. of the Virgin Islands*, 618 F.3d 232, 240–41 (3d Cir. 2010) (holding that, although plaintiffs "cannot seek money damages" under Section 1983, plaintiff could "seek prospective injunctive

---

[11]     Plaintiff's Complaint also seeks a declaration that Defendants' conduct violated the Fifth Amendment. However, Plaintiff's briefing does not proffer any arguments in opposition to dismissal of that claim. Indeed, the Fifth Amendment only applies to the Federal government and not state actors such as the defendants in the instant lawsuit. *See Santos v. Sec'y of Health & Human Servs.*, 532 F. App'x 29, 33 (3d Cir. 2013) ("The Fifth Amendment applies to actions of the federal government, not state actions."). Accordingly, to the extent Plaintiff has not abandoned its Fifth Amendment claim, that claim is dismissed with prejudice against all Defendants, as well.

relief" against state personnel in their official capacities).   I will now turn to whether the prospective injunctive relief claims against the Individual Defendants may proceed as pled.

### i.  Personal Involvement

Plaintiff's constitutional claims against the Individual Defendants face another hurdle: personal involvement.  *Sutton v. Rasheed*, 323 F.3d 236, 249 (3d Cir. 2003) ("A defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable); *see also Rode v. Dellaciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).  Defendants argue that the claims against Individual Defendants must be dismissed "for lack of personal involvement and/or knowledge" because the doctrines of respondeat superior and vicarious liability are inapplicable in Section 1983 claims against government officials.[12]  Def. Br. at 17-18.

A Section 1983 plaintiff cannot rely solely on a *respondeat superior* theory of liability. . *See Alexander v. Gennarini*, 144 F. App'x 924, 925 (3d Cir. 2005) ("Section 1983 liability cannot be found solely on the basis of respondeat superior.").  Instead, a plaintiff must allege that facts demonstrating that each defendant had personal involvement in the alleged wrongs.  *See Sutton,* 323 F.3d at 249; *Rode*, 845 F.2d at 1207.  "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Id.; see also Murphy v. Middlesex Cty.,* 361 F. Supp. 3d 376, 387 (D.N.J. 2019) ( *"*a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations").  Alternatively, "defendants may be sued as policy makers "if it is shown that such defendants, 'with

---

[12]     Defendants erroneously characterize Plaintiff's claims as being brought against Callahan and Grewel in their individual or personal capacities.  Def. Br. at 17.  Spurred by Defendants' error, Plaintiff argues that Defendants' arguments regarding the lack of personal involvement are "moot" because "Plaintiff did not bring constitutional violations against these defendants in their individual capacities, as noted in the caption of this case."  Pl. Br. at 13 n.13.

deliberate indifference to the consequences, established and maintained a policy, custom, or practice which directly caused [the] constitutional harm." *Murphy*, 361 F. Supp. 3d at 387.

As an initial matter, Plaintiff has not alleged any specific actions taken by either Attorney General Grewal or Superintendent of the New Jersey State Police Callahan.  As alleged, nothing in Plaintiff's Complaint suggests that either of the Individual Defendants directed, had knowledge of, or otherwise assented to the alleged violations of Plaintiff's rights.  Notably, all of Plaintiff's communications were with Detective Hearne, Detective Sergeant Bloom, and Lieutenant Mazzagatti, none of whom are named as defendants in this action.  *See* generally Compl.  Aside from their respective positions, Plaintiff has not alleged facts suggesting that the Individual Defendants directed, or were even aware of, the communications between Plaintiff and the other individuals at the Police.  Thus, it appears that Plaintiff's claims against Individual Defendants could only be based on a theory of policy maker liability.

There are two cognizable theories of policy maker liability.  *See A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004).  First, a plaintiff can allege that the supervisor's implementation or maintenance of a policy, practice, or custom harmed the plaintiff.  *Parkell v. Danberg*, 833 F.3d 313, 330 (3d Cir. 2016); *Santiago v. Warminster Twp.*, 629 F.3d 121, 129 n.5 (3d Cir. 2010).  Thus, a person who has final policymaking authority may be held liable under § 1983 if that person established a policy that is unconstitutional and that injures the plaintiff.  *Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 223 (3d Cir. 2015); *Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989).  Second, supervisory liability may also be established by the failure to maintain proper policy, if the plaintiff is able to "(1) identify the specific supervisory practice or procedure that the supervisor failed to employ, and show that (2) [existing practices] absent [the identified] custom or procedure created an unreasonable risk of the

ultimate injury, (3) the supervisor was aware that this unreasonable risk existed, (4) the supervisor was indifferent to the risk; and (5) the underling's violation resulted from the supervisor's failure to employ that supervisory practice or procedure. *Brown v. Muhlenberg Twp*., 269 F.3d 205, 216 (3d Cir. 2001) (quoting *Sample*, 885 F.2d at 1118).

Here, Callahan is the Superintendent of the State Police and the executive and administrative head of the State Police. N.J. Stat. Ann. § 52:1-1. Moreover, the State Police is an executive department organized under the authority of the State's Attorney General. N.J. Stat. Ann. § 52:17B-2; N.J. Stat. Ann. § 52:17B-3. Thus, based on their statutory authority, both Callahan and Grewal may have supervisory or policymaking authority over the State Police. However, Plaintiff's Complaint does not expressly allege policymaker liability. Nor do the facts as alleged in the Complaint support such a theory, under either version of policy maker liability.

With respect to the first theory of policy maker liabillity, Plaintiff has not identified the policy at issue, let alone, whether it was implemented by Callahan and Grewal. *See e.g*., *Murphy*, 361 F. Supp. 3d at 388 (finding that plaintiff had adequately pled a supervisory theory of liability under section 1983 where plaintiff alleged that defendant "was at all times material herein responsible for the implementation of the New Jersey Attorney General directives relating to internal affairs investigations," and "had final policy and oversight authority for internal affairs investigations conducted by the Middlesex County Prosecutor's Office."). Indeed, Plaintiff alleges that "[t]he State of New Jersey has no statute, regulation, or provision that grants, authorizes, or empowers the Attorney General, the New Jersey State Police, or Bloom as the Assistant Unit Head for the Firearms Investigation Unit with the discretion to unilaterally, and without due process, block, interfere with, terminate, or otherwise disrupt the sale of a lawful firearm. " Compl.¶ 40. Such an allegation is plainly at odds with a theory that Individual Defendants, as policy makers,

25

established or enforced certain policies and practices which gave rise to the constitutional violations at issue.  Further, on this motion, Defendants conceded that there is no official administrative procedure by which the New Jersey State Police can render a binding decision on the legality of a particular firearm.  Def. Supp. Br. at 2.  Thus, it seems unlikely that there would be an official or formalized policy for Plaintiff to challenge.  Regardless, Plaintiff's Complaint is devoid of facts connecting the alleged constitutional violation with a policy established by either of the Individual Defendants.

Plaintiff also has not alleged that it was the absence of a specific policy which gave rise to the alleged constitutional violations at issue.  Even construing Plaintiff's allegations as having averred a failure to implement a particular policy, Plaintiff would still be required to plead facts demonstrating that the Individual Defendants were aware that the lack of relevant policies created an unreasonable risk of a constitutional violation.  *See e.g.*, *Neal v. Powell*, No. 17-4768, 2018 WL 2754071, at *5 (D.N.J. June 8, 2018) (finding that plaintiff adequately alleged defendants were "deliberately indifferent to the risk posed by the alleged deficient policy" regarding use of force where there was a" documented history of the deployment of excessive force").  Plaintiff has not done so.  Accordingly, Plaintiff has not adequately alleged that the failure to implement a particular policy gave rise to their constitutional violations.

Accordingly, Plaintiff's Section 1983 and declaratory judgment claims against the Individual Defendants are dismissed, because Plaintiff has not demonstrated personal involvement either in the form of specific actions taken by the Individual Defendants, or under a theory of supervisory liability.  If Plaintiff believes it can name new defendants who were personally involved in the alleged constitutional violations, or allege additional facts demonstrating the

personal involvement of the Individual Defendants, Plaintiff is granted leave to file an amended complaint with respect to these claims within thirty days.[13]

## IV.   <u>CONCLUSION</u>

For the reasons set forth above, Defendants' Motion to Dismiss is **GRANTED**.   Counts I and II of the Complaint, *i.e.*, Plaintiff's Section 1983 and declaratory judgment claims based on alleged violations of the Second and Fourteenth Amendments, against defendants the State of New Jersey, State Police, and the Department of Law are dismissed with prejudice.   Those claims are dismissed without prejudice with respect to Grewal and Callahan, and Plaintiff is granted leave to file an amended complaint re-pleading the Second and Fourteenth claims against them, or naming other defendants, within thirty (30) days of the accompanying order.   Counts III-VIII of the Complaint, which are Plaintiff's claims for tortious interference with contract and tortious interference with economic advantage, defamation, defamation per se, civil conspiracy, and Plaintiff's claim for monetary damages pursuant to Section 1983 are barred by sovereign immunity and dismissed against all Defendants.


Date: January 22, 2021

/s/ Freda L. Wolfson<br>Freda L. Wolfson<br>U.S. Chief District Judge

---

[13]     Alternatively, Plaintiff may opt to dismiss this action and file a new complaint in state court in order to pursue these claims together with the state law claims.